# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | | |
|---|---|---|
| **STEVE BIGGERS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RON MASSINGILL** | § | Civil Action No. 4:23-cv-00359-P |
| *Defendant,* | § | |

## <u>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS</u>

COMES NOW, Plaintiff Steve Biggers, to file this response to the Rule 12(b)(6) Motion to Dismiss (ECF No. 49, "Motion") filed by Defendant Ron Massingill.

SUMMARIZING, this suit concerns Defendant Massingill's denial of Biggers's rights to free speech and to petition the Hood County Commissioners Court, where Massingill serves as county judge, and while conducting a public meeting, he illegally forced Biggers to leave meetings in retaliation for the content of his speech, though they are limited public forums where such speech is protected.

The Motion alleges that Biggers failed to articulate a 42 § 1983 claim for deprivation of Equal Protection in his First Amended Complaint ("Complaint"), and Plaintiff's claims under the Texas Constitution fail "as a matter of law". Biggers also asserted that immunities bar recovery.

Defendant's Motion does not challenge Plaintiff's First Amendment claims beyond the general application of immunity, so that claim is not rehashed here.

Plaintiff generally agrees with the legal authorities cited by Defendant as governing Rule 12(b)(6) motions to dismiss. Where the parties disagree is simply whether Plaintiff has properly alleged his claims, with each party asserting their predictable positions. Plaintiff herein demonstrates that his claims are sound, and no immunity bars this action. Though only a proper pleading should be required at this stage, Plaintiff here also argues on the basis of evidence.

## Table of Contents

Table of Contents ..................................................................................................... 3

Table of Authorities................................................................................................. 4

   A.   Plaintiff properly pleaded a 42 § 1983 equal protection claim. ......................... 6

   B.   Legislative Immunity does not bar Plaintiff's claims. ...................................... 13

   C.   Plaintiff properly alleges that his First Amendment rights were violated and judicial immunity does not bar Plaintiff's claim................................................................... 15

   D.   Plaintiff's Claims under the Texas Constitution should not be dismissed. ...................... 21

PRAYER ................................................................................................................. 22

## Table of Authorities

### Cases

*Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985) ............................................... 20

*Baker v. McCollan,* 99 S. Ct. 2689 (1979) ................................................................... 5

*Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) ...................................................... 19

*Bd. of Trs. of Univ. of Ala. v. Garrett*, 121 S. Ct. 955 (2001) ...................................... 7

*Bogan v. Scott-Harris*, 118 S. Ct. 966 (1998) ............................................................. 12

*Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) ................. 15

*Bryan v. City of Madison*, 213F.3d 267, 272 (5th Cir. 2000).......................................... 13

*Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cr. 1994) ...................................................... 17

*Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999) ........................................... 5

*Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 707
    (Tex. App.—Corpus Christi 1986, no writ) ........................................................... 22

*Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024) ...................................................... 13

*Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) ......................................................... 13

*Empower Texans, Inc. v. Geren*, 388 F. Supp. 3d 738, 744 (W.D. Tex. 2019)............................ 14

*Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004) ........................................ 5

*Forrester v. White,* 484 U.S. 219, 223 (1988)............................................................ 13

*Golden Glow Tanning Salon, Inc. v. City of Columbus, Miss.*,
    52 F.4th 974, 978 (5th Cir. 2022) .................................................................. 7

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001)......................................... 15

*Heller v. Doe by Doe*, 113 S. Ct. 2637 (1993) ........................................................... 7

*Hughes v. Tarrant Cnty., Tex.*, 948 F.2d 918, 920 (5th Cir. 1991) .................................... 13

*Huminski v. Corsones*, 396 F.3d 53, 77-78 (2d Cir. 2005) .............................................. 20

*Hutchinson v. Proxmire*, 442 U.S. 111, 124 (1979) ...................................................... 13

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997)................................................. 6, 10

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979) ....... 12

*Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV,
    2021 Tex. App. LEXIS 2439, at *26-28 (Tex. App. Mar. 31, 2021)................................... 16

*Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) ........................5, 7, 11

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) ............................................. 19

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 104 S. Ct. 892 (1984)................................... 5

*Mireles v. Waco*, 112 S. Ct. 286 (1991)............................................................. 17, 19

*Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 633 (1st Cir. 1995)............................. 14

*Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992) ......................... 7

*Pickett v. Williams*, No. 3:17cv557, 2019 WL 3021196, at *3 (N.D. Tex. June 24, 2019).......... 20

*Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) ........................... 7

*Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS
    41478, at *7 (N.D. Tex. 2023) ...................................................................... 16

*Sheppard v. Maxwell*, 86 S. Ct. 1507 (1956) ............................................................ 17
*Snowden v. Hughes*, 64 S. Ct. 397 (1944)................................................................. 10
*Stein v. Dallas Cnty.*, 3:22cv1255-D,
    2023 WL 2700720, at *5 n. 4 (N.D. Tex. March 29, 2023)............................ 9, 10
*Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384-85 (4th Cir. 2008) ....... 15
*Strata v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020) ........................................................ 7
*Supreme Ct. of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731-734 (1980) ............... 13
*Tenney v. Brandhove*, 341 U.S. 367, 376, L. Ed 1019 (1951)...................................... 13
*Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 (1949)............ 15, 16
*Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) ..............................7, 11
*Tobias v. Price*, No. 3:06cv1361-M, 2009 WL 3681981, at *6 (N.D. Tex. Nov. 4, 2009) ..... 17, 20
*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)........................................... 5, 6
*Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) ...................... 15
*Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) .............................................. 5

## Statutes

8 U.S.C.S. § 43.......................................................................................... 13
8 U.S.C.S. § 47(3)....................................................................................... 13
Tex. Gov't Code § 551.007 .......................................................................... 16, 22

## Rules

Tex. R. Civ. Pro. 12(b)(6)........................................................................... 1, 5

## Other Authorities

Boatright, Jason; Feature: Creating a System: An Overview of the Spanish Origins of Texas
    Law., 83 Tex. B. J. 392................................................................................ 18
Court Structure of Texas Descriptive Outline, September 1, 1998................................ 18

## Constitutional Provisions

First Amendment............................................................................................ passim
Tex. Const. art. 1, § 27 .............................................................................. 21, 22
Tex. Const. art. 1, § 8 .................................................................................... 21
Tex. Const. art. 5, § 18(b) ............................................................................... 18

**A. Plaintiff properly pleaded a 42 § 1983 equal protection claim.**

1.     All parties agree that "[s]ection 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 104 S. Ct. 892 (1984)) and further that "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Flores v. City of Palacios,* 381 F.3d 391, 404 (5th Cir. 2004) (quoting *Baker v. McCollan,* 99 S. Ct. 2689 (1979)). Motion at 6-7.

2.     The parties disagree concerning whether or not equal protection has been successfully invoked by Plaintiff. Specifically, whether plaintiff has successfully shown that "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (internal quotation marks omitted). Motion at 7.

3.     A plaintiff may bring an equal protection claim as a "class of one" when he has been (1) intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

4.     As detailed in the Original and now Amended Complaint, Defendant acted to punish the Plaintiff for his speech while allowing others to veer from agenda items and make critical remarks, denying him the opportunity to complete his remarks, though allowing similar verbiage from speakers who are allies of Massingill. This unequal treatment merits liability under the "class of one" doctrine as described in *Willowbrook,* 528 U.S. 562 at 564.

5.    The factual record indisputably shows that Defendant targeted and censored Plaintiff for his criticism of the Commissioner's Court while other persons, identically situated to Plaintiff, were allowed to criticize individual commissioners and the Commissioner's Court.

6.    Defendant attempts to distinguish his disparate treatment by arguing that Massingill advised Plaintiff to confine his comments to agenda items and that he was ultimately removed after arguing to Judge Massingill that "the petty, weak leadership that you show falls at your feet." Motion, p. 11. That attempt fails even under the interpretation of these events most charitable to Defendant's argument, as Plaintiff is still entitled to a "class of one claim" in that Massingill did not remove other speakers critical of other commissioners. As described in the Complaint, Massingill did not: a) admonish such speakers, b) require them to confine comments to the "agenda items", or c) prevent them from criticizing the Commissioner's Court.

7.    Plaintiff has clearly alleged that Massingill created a deliberate unequal policy of censoring Plaintiff and chose to enforce it against him contrary to law.

8.    Both parties agree that the Supreme Court "has recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that [he] has intentionally been treated differently from others similarly situated and that there is no rational basis for the difference of treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (internal citations omitted). But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not deny them equal protection of laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (internal quotation marks omitted). Defendant's Motion at 7.

9.    Defendant relies on three cases to buttress its interpretation that Biggers does not successfully meet the class of one categorization. Defendant contends that if "there is *a*

conceivable rational basis for the official action, it is immaterial that it was not *the* or *a primary* factor in reaching a decision or that it was not actually relied upon by the decision-makers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (emphasis in original). "[T]he burden is on the challenging party to negate 'any reasonable conceivable state of facts that could provide a rational basis.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 121 S. Ct. 955 (2001) (quoting *Heller v. Doe by Doe*, 113 S. Ct. 2637 (1993)). Motion at 7-8.

10.     Defendant relies on four additional cases, arguing that

> "To determine whether persons or groups are similarly-situated, [courts] inquire as to whether they 'are in all relevant respects alike.'" *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)). This analysis is "case specific," *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012), and requires courts to "consider the full variety of factors that an objectively reasonable . . . decision[]maker would have found relevant when making the classification." *Golden Glow Tanning Salon, Inc. v. City of Columbus, Miss.*, 52 F.4th 974, 978 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Strata v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020)). In cases involving the application of local rules or ordinances, "the plaintiffs and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Lindquist*, 669 F.3d at 234.

Motion at 8.

11.     The Complaint alleges Plaintiff was a disfavored speaker because he was treated materially different from other speakers who criticized County Commissioners. Complaint, para 28.

12.     Additionally, the Complaint alleges that Plaintiff clearly articulated during the commissioners' meeting on April 26, 2022, Defendant Massingill referred to former Commissioner Ron Cotton by name while speaking about a specific agenda item. Biggers criticism of Commissioner Cotton, drew Massingill's censure but another speaker was permitted to criticize Commissioner Eagle with impunity. ECF 13, para. 10.

13.    Specifically, Agenda Item 6, on which Biggers addressed the Commissioners' Court reads:

> **REGARDING ITEM VIII.C.6.** Motion made by Commissioner Andrew to move that we remove this agenda item from this court: to approve the petition submitted to the court on the April 12, 2022 Commissioners Court regarding accusations against Commissioner Dave Eagle. (COM.P2)

14.    In the Complaint, Plaintiff clearly plead his equal protection claim by showing that he was treated differently by Defendant from another speaker who also criticized a commissioner:

> 10.    On April 26, 2022, Biggers referred to former Commissioner Ron Cotton by name while speaking about a specific agenda item. Exhibit 4 (Meeting Minutes of April 26, 2022). Massingill interrupted Biggers, accused him of attacking Cotton, and then directed Sheriff Deeds to escort Biggers out of the meeting, refusing to allow Biggers to finish his remarks within his remaining time. During that same meeting, another speaker criticized Commissioner Eagle and made allegations of a violent attack; Massingill allowed the critical speech. Exhibit 4 (Meeting Minutes of April 26, 2022).

Complaint (ECF 13), para. 10.

15.    Defendant seeks to muddy the waters by taking portions of Biggers' commentary in isolation including "fired" "have come to expect" and "antics" and arguing that those comments were off topic. First, this analysis is factually insuperable. The comments were about the petition submitted to the court on April 12, 2022, regarding "accusations against commissioner Dave Eagle." Thus, the topics were germane to the agenda item. However, the relevant analysis for the equal protection claim at issue is whether Plaintiff's comments were similar or in Defendant's language "meaningfully different from other speakers".

16.    The tenth speaker on agenda item number 6, Harold Granek accused Commissioner Eagle of lying about his residence on an election from. Like Biggers, Granek criticized Commissioner Eagle and even accused him of electoral malfeasance. Nevertheless, he was not penalized or reprimanded by Defendant in any way, let alone removed from the court. Tellingly, Defendant

takes great pains neither to identify nor comment on Granek's remarks because any reasonable interpretation of his statements demonstrates that he is vastly more vituperative in his criticism of Eagle, than Plaintiff was of Cotton, going so far as to accuse Eagle of committing a crime and breaching the public trust.

17.     Defendant's allegations that Plaintiff's conduct "disrupted the proceedings, showed contempt toward the court, and violated the County's rules of decorum," at best bear on the First Amendment claims at issue, but have no bearing whatsoever on the equal protection claim. Defendant's Motion ECF 49 at 9.

18.     Defendant further asks the court to stretch its equal protection analysis to the breaking point by arguing that Biggers' language rationally falls outside of equal protection because **after** Defendant a) wrongly accuses him of being off topic and b) begins to remove him from the Court, he in Defendant's words offends the County Commissioners'' unwritten *lèse-majesté* law via "the contemptuous tone with which he addressed Judge Massengill." This reversion to 18th century protections of magistrates' "honor" is patently offensive to the First Amendment and has no place in the American constitutional order. Contrary to Defendant's notion, a legislator, like Judge Massingill, is not entitled to be free from hearing language that offends his feelings when he is in the process of violating constitutional rights in a public venue.

19.     In an effort to find some foundation for its implausible equal protection analysis, Defendant refers the court to *Stein v. Dallas Cnty.*, 3:22cv1255-D, 2023 WL 2700720, at *5 n. 4 (N.D. Tex. March 29, 2023). However, *Stein* is inapplicable because the Plaintiff in that case claimed an equal protection violation based on 1) an allegation that he was only allowed to speak for about 30 seconds, while other speakers were given a full three minutes, 2) his presentation was live-streamed using a less-favorable wide camera angle, rather than a close-up view of his face, and 3)

the Marshals stood in different positions while he was making his presentation, as if they had been ordered in advance to treat him as a security threat. *Id.* Far from the straw-grasping and thin-gruel equal protection rationalizations articulated in *Stein*, as outlined supra, Biggers claims to have been denied equal protection by being treated in a materially different way from another speaker who engaged in similar (arguably even more "offensive") conduct.

20.    Further pushing the bounds of credulity, Defendant has the temerity to allege that Biggers has no plea to "classify or distinguish between two or more relevant persons or groups. *Johnson v. Rodriguez*, 110 F.3d 299, 307 (5th Cir.1997). However, paragraph 10 clearly reads, "[d]uring the same meeting, another speaker criticized commissioner Eagle and made allegations of a violent attack; Massingill allowed the critical speech."

21.    Defendant's reliance on *Snowden v. Hughes*, is completely misplaced. 64 S. Ct. 397 (1944). There the Supreme Court held:

> But not every denial of a right conferred by state law involves a denial of the equal protection of the laws, even though the denial of the right to one person may operate to confer it on another. Where, as here, a statute requires official action discriminating between a successful and an unsuccessful candidate, the required action is not a denial of equal protection since the distinction between the successful and the unsuccessful candidate is based on a permissible classification. And where the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.

22.    However, the holding was articulated on facts concerning a determination by a State Primary Canvassing Board, whose mandate was to ascertain the candidate eligible for nomination and election as representatives in the state assembly. *Id.*  Here, there is no "erroneous or mistaken performance of a statutory duty", there is the "more" reference in the case law, e.g. a deliberate denial of equal protection by throwing one speaker out of a meeting for his remarks while allowing

another speaker to make similar remarks. Deliberate and malicious denial of equal protection is not the circumstance contemplated in *Snowden* and its application is inapposite here.

23.    Likewise, *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012) is inapplicable because the court found that the plaintiff had failed to show that it was similarly situated to the other car dealership compared to which it claimed unequal treatment. By contrast, Biggers, as noted above, has alleged that he was nearly identically situated to another speaker who was not removed.

24.    Finally, Defendant relies on *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021), where the court found that Equal Protection was not violated by a statute that regulated clothing rules imposed on latex clubs but not on sports bars with scantily clad waitresses. Plaintiff will spare the Court a detailed rendition of the *Hegar* analysis on what degree of exposed buttock is sufficient to create a class separation between types of adult service providers. Suffice it to say that two speakers at the Commissioners' Court, commenting on a commissioner's performance of his duties, on the same agenda item, fall squarely with the "all relevant respects alike" analysis in a way that sparsely attired professional women do not.

25.    In sum, there is simply no basis for allowing criticism of one commissioner and not another. To treat two identically situated parties differently is the essence of an equal protection violation.

26.    As previously pled, two speakers criticized members of the Commissioners' Court. One faced no consequences. The other was unable to finish his statement, was physically removed from the court, publicly harassed while sitting in the audience on a later date, stripped of his time, and removed again on a later date. Though at this dismissal stage, pleadings should be sufficient, the evidence demonstrates that these two similarly situated individuals received substantially different treatment, raising serious equal protection concerns.

**B. Legislative Immunity does not bar Plaintiff's claims.**

27.    Defendant contends that Massingill is absolutely immune from liability under Sec. 1983 under a legislative immunity doctrine articulated in *Bogan v. Scott-Harris*, 118 S. Ct. 966 (1998) and *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979).

28.    However, Defendant neglects to mention that the court in *Bogan* declined to base legislative immunity on interactions at a public hearing, a "ministerial" or nonlegislative function and instead concluded that:

> This leaves us with the question whether, stripped of all considerations of intent and motive, petitioners' actions were legislative. We have little trouble concluding that they were. Most evidently, petitioner Roderick's acts of voting for an ordinance were, in form, quintessentially legislative. Petitioner Bogan's introduction of a budget and signing into law an ordinance also were formally legislative, even though he was an executive official.

*Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998).

29.    Similarly, the court's finding of legislative immunity in *Tahoe Regional Planning Agency* concerned a finding by the planning agency that took the plaintiff's property, a legislative rather than a ministerial act.  *Lake Country Estates, Inc.,* 440 U.S. at 394.

30.    Additionally, neither *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000)[1] nor *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)[2] entail the ministerial duties of the Commissioners Court at issue.

---

[1] Challenged actions by the mayor included: (1) vetoes of Bryan's plans, (2) delaying tactics to block Bryan's plans at board meetings, (3) votes regarding rezoning property, (4) the placement of a rezoning decision back on the agenda without notifying the parties, when she and the two aldermen voted to rezone the property notwithstanding the board's earlier vote against rezoning.

[2] A civil rights litigant brought an action against a state legislator, state legislative committee and others, under 8 U.S.C.S. §§ 43 and 47(3), alleging constitutionally protected rights when the legislator and committee summoned him before the committee and questioned him as to his activities after the litigant circulated a petition to persuade the state legislature not to appropriate further funds for a particular legislative committee.

31.     Defendant goes on to cite *Forrester v. White,* 484 U.S. 219, 223 (1988), *Supreme Ct. of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731-734 (1980), *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967), and *Hutchinson v. Proxmire*, 442 U.S. 111, 124 (1979) all to articulate the general principles that legislative immunity exists and that it is an act-based rather than motive-based analysis. However, none of these cases bear on the relevant question: was Massingill acting in a legislative or ministerial capacity when he violated Bigger's equal protection rights?

32.      The operative principle of law was articulated by the Fifth Circuit over thirty years ago: "Not all actions taken by an official with legislative duties, however, are protected by absolute immunity—only those duties that are functionally legislative." *Hughes v. Tarrant Cnty., Tex*., 948 F.2d 918, 920 (5th Cir. 1991) (citation omitted).

33.     Indeed, the fact that Massingill held Biggers in contempt decisively removes the action from the legislative sphere. As the Fifth Circuit has previously articulated, "[a]lthough some legislative bodies and agencies in Texas are given the power to punish for contempt, punishing for contempt is typically a judicial function." *Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024).

34.     Defendant attempts to salvage its legislative immunity argument by relying on *Empower Texans, Inc. v. Geren*, 388 F. Supp. 3d 738, 744 (W.D. Tex. 2019), rev'd on other grounds, 977 F.3d 367 (5th Cir. 2020), which held that Texas House of Representatives Committee Chairman Geren had authority to deny media credentials to Empower Texas without implicating a First Amendment violation due to legislative immunity.

35.     However, Judge Massingill is not a legislative committee chairman, he is a County Judge of the Commissioners Court and Fifth Circuit case law as articulated in *Diaz* places him squarely within the judicial role when exercising punishment for contempt, thus *Geren* is not the controlling precedent.

36.    Controlling precedent definitively excludes Massingill's conduct from the ambit of legislative immunity and decisively refutes his reliance on *Geren*.

37.    Defendant's final authority under his legislative immunity claim is a first circuit precedent, *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 633 (1st Cir. 1995), which maintains that legislators may enforce rules adopted by a legislative body. This precedent fails, first because it contradicts the controlling Fifth Circuit precedent, *Diaz*, and because Massingill's holding in contempt was judicial in function rather than legislative. In sum, legislative immunity does not bar Bigger's claims against Massingill.

### C. Plaintiff properly alleges that his First Amendment rights were violated and judicial immunity does not bar Plaintiff's claim.

38.    Defendant argues on page 16 of his Motion that judicial immunity bars Plaintiff's recovery. There is no dispute that a Commissioners' Court may hold the public to a standard of civility. However, the Commissioners' Court is a limited public forum and controlling precedent clearly shows that judicial immunity does not bar recovery for First Amendment violations at public hearings under the facts alleged by the Complaint.

39.    A limited forum is a type of a designated public forum. Here, the government limits access to a designated public forum to certain classes or types of speech. The Supreme Court has instructed that in a "limited forum," the government may discriminate against classes of speakers or types of speech. *Good News Club v. Milford Central School*, 533 U.S. 98 (2001). However, the government is still prohibited from engaging in viewpoint discrimination.

40.    Even an unruly speaker at a public hearing can remain at a public meeting as long as he speaks in turn and on topic, and he cannot be censored based on viewpoint under the limited public forum doctrine. *See, e.g. Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384-85 (4th Cir. 2008).

41.    Texas's Fourth Court of Appeals in San Antonio recently opined on the nature of disruption under federal case law in limited public forums, where it evaluated a similar case and provided the following persuasive argument and conclusions:

> The undisputed evidence at the bench trial shows that at the tenants' council meeting in November 2016, the complained-of conduct by Ledezma, including her comments and her attempts to have other tenants sign a petition, related to Ledezma advocating the board for a change in policies at the housing complex. Thus, the undisputed evidence shows that Ledezma's conduct related to matters of public concern. Moreover, while there was evidence that Ledezma was disrespectful in making her comments, there was no evidence that she used "true threats," words of "incitement," or "fighting words." *See Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (explaining that the First Amendment does not protect "fighting words"—"those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction"—or "true threats"—"those statements where the speaker means to communicate a serious expression [*28] of an intent to commit an act of unlawful violence to a particular individual or group of individuals"); *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) (explaining "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). That other tenants were angry at Ledezma's comments are not sufficient to justify a violation of her rights under the First Amendment. *See Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 (1949) (noting that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger"). Therefore, we conclude Ledezma's conduct is protected by the First Amendment.

*Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV, 2021 Tex. App. LEXIS 2439, at *26-28 (Tex. App. Mar. 31, 2021).

42.    In this case, there can be no doubt that Plaintiff's comments were on a matter of public concern, specifically the comportment of Judge Massingill and former commissioner Cotton.

43.    Additionally, Defendant's analysis fails to grapple with the fact that the Texas Government Code requires that "[a] governmental body shall allow each member of the public who desires to address the body regarding an item on an agenda for an open meeting of the body to address the

body regarding the item at the meeting before or during the body's consideration of the item." Tex. Gov't Code § 551.007. It further clarifies "a governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." *Id.* The Government Code does not state that a citizen may only criticize the body as a whole or allow prior restraint of criticism of individuals like the prior restraint and expulsion from the Court employed by Defendant.

44.     Conspicuously absent from Defendant's analysis is any mention of the fact that early this year the Northern District of Texas held that a meeting rule similar to that at issue here served as grounds for holding government officials accountable. *Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023). The Hood County Commissioners' Court's rules specifically authorize and protect criticism of the commissioners including the county judge:

> F.     It is not the intention of the Hood County Commissioners' Court to provide a public forum for the demeaning of any individual or group.  Neither is it the intention of the Court to allow a member (or members) of the public to insult the honesty and/or integrity of the Court, as a body, or any member or members of the Court, individually or collectively.  Accordingly, profane, insulting or threatening language directed toward the Court and/or any person in the Court's presence and/or racial, ethnic, or gender slurs or epithets will not be tolerated. **These Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service.**

45.     The simple fact is that Defendant retaliated against Plaintiff for his April 26, 2022, speech criticizing Massingill and former Commissioner Cotton, while another member of the audience, at the same meeting, experienced no retaliation for criticizing Commissioner Eagle.

46.     Similarly, Defendant's assertion that Judge Massingill has a right to maintain order in a courtroom under *Cameron v. Seitz* does not excuse Defendant from liability for violation of the First Amendment. 38 F.3d 264, 271 (6th Cr. 1994).

47.    Plaintiff agrees that judges are absolutely entitled to "maintain the decorum and security of their courtrooms and the courthouses in which those courtrooms are located." *Tobias v. Price*, No. 3:06-cv-1361-M, 2009 WL 3681981, at *6 (N.D. Tex. Nov. 4, 2009). Plaintiff also agrees that a judge has authority to detain someone in a courtroom as a normal judicial function, as described in *Mireles v. Waco*, 112 S. Ct. 286 (1991). Lastly, Plaintiff agrees that the courtroom and its premises are subject to the control of the court. *Sheppard v. Maxwell*, 86 S. Ct. 1507 (1956).

48.    But none of these cases apply to the case at bar. Defendant stretches the term "judge" far beyond its intended meaning in these cases. Judge Massingill is a County Judge who was not presiding over a court during the events at issue, but a public meeting. As the Texas Court's Court Structure of Texas Descriptive Outline explains, "the Texas Constitution establishes one county court in each of the 254 counties of the State, but not all such courts exercise judicial functions. In populous counties, the 'county judge' may devote full time to the administration of county government."[3] Indeed, Article 5, Section 18(b) of the Texas Constitution establishes the executive role, "[t]he County Commissioners…with the County Judge as presiding officer, shall compose the County commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State."[4]

49.    During the events relevant to this case, Massingill was presiding over a public hearing, an executive function, and not a judicial proceeding. Thus, his attempt to plead judicial immunity

---

[3]    Court Structure of Texas Descriptive Outline, September 1, 1998 https://www.txcourts.gov/All_Archived_documents/JudicialInformation/pubs/AR98/JB/ctstr98.htm.
[4]    Boatright, Jason; FEATURE: CREATING A SYSTEM: AN OVERVIEW OF THE SPANISH ORIGINS OF TEXAS LAW., 83 Tex. B. J. 392 ("Texas law is unique. It uses the common law of England as a rule of decision in court, but it was a jurisdiction of the civil law of Spain, France, and Mexico for over 300 years and it retains many elements of those laws today… Spanish law required that alcalde courts be established for the new settlers…. The Texas county judge shares several characteristics with the Spanish and Mexican alcalde, including the dual possession of both executive and judicial powers. And the Texas district judge is a direct descendant of the alcalde, presiding over courts that had essentially the same jurisdiction as the Spanish and Mexican judicial officer did.")

when acting in a non-judicial role constitutes a misapplication of the ancient and noble principle of judicial immunity beyond its scope of any public policy rationale for its existence.

50.    All of Defendant's case law on judicial immunity presupposes judges in the ordinary use of the term and relies exclusively on federal authority where judges are purely creatures of the judicial organ of government and not subject to the mixed powers of a Texas County Judge inherited from Spanish law.

51.    Plaintiffs agree that a) judges are entitled to judicial immunity, and b) a County Judge acting in a judicial capacity, e.g. hearing probate cases in a low-population county, is entitled to judicial immunity. However, Defendant cites no authority suggesting that a County Judge presiding over a public hearing in a nonjudicial proceeding is entitled to judicial immunity, and Plaintiff can find no such authority exists.

52.    Indeed, Defendant's own case law buttresses Plaintiff's interpretation of Massingill's role. On page 16 of his Motion, Defendant quotes *Mireles v. Waco*, for the proposition that (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" 112 S. Ct. 286 (1991). Additionally,

> The Fifth Circuit has enumerated the following considerations to aid in deciding whether a plaintiff's complaint alleges actions which are judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in her official capacity.

Motion at 17, citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)).

53.    In an odd application of linguistic gymnastics, Defendant bases Massingill's authority on the fact that he "is given statutory authority to preside over the Commissioners' Court" and the

actions Plaintiff complains of occurred in a "courtroom" and the "complained of matter was before the court in the form of a public comment," and "Plaintiff's complaints arose from his visits to Judge Massingill in his official capacity." The logical extension of Defendant's analysis is that *any* activity performed by a County Judge in a Courtroom constitutes protected judicial action.

54.     Defendant provides no support for the proposition that Massingill, in presiding over the Commissioners' Court when it is not conducting judicial business, was performing a judicial function. The Commissioners' Court always meets in the Commissioners' Courtroom, as that is the purpose of the room. The mere fact that the room is called a Courtroom does not make all business conducted therein protected by judicial immunity. Furthermore, public comment periods during a commissioners meeting are a legislative and administrative function, not a judicial function, further undercutting Defendant's argument. Finally, Plaintiff's complaints arose from his interactions with Judge Massingill in his official capacity as presiding officer of a legislative body, not in his official capacity as a judicial officer.

55.     Thus, Defendant's analysis fails all of his proffered factors: 1) Massingill's actions were not judicial in nature; 2) the actions occurred in a room functioning as a legislative assembly rather than as a courtroom qua the contemporaneous seat of a court; 3) the actions in question did not involve a case before the court; 4) the actions did not arise from a visit to the judge in his official capacity *as a judge*."

56.     Not content to fail all of his proffered factors for judicial activity, Defendant doubles down with "[w]here a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." Motion at 17; *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). Here there is no subject matter jurisdiction, because there is no case or controversy amenable to judicial remedy. Defendant then argues on page 21 of his Motion that "Judges act within their jurisdiction

and are entitled to absolute judicial immunity when they maintain the decorum and security of their courtroom and the courthouses in which those courtrooms are located." *Pickett v. Williams*, No. 3:17cv557, 2019 WL 3021196, at *3 (N.D. Tex. June 24, 2019), report and recommendation adopted, 2019 WL 3006985 (N.D. Tex. July 10, 2019) (quoting *Huminski v. Corsones*, 396 F.3d 53, 77-78 (2d Cir. 2005)); *Tobias v. Price*, No. 3:06-cv-1361-M, 2009 WL 3681981, at *6 (N.D. Tex. Nov. 4, 2009).

57.     Obviously, *Pickett, Huminski,* and *Tobias* contemplate maintaining the security and decorum of courtrooms and courthouses in the ordinary meaning of the words. If Defendant's argument is taken at face value, the unique Texas County Judge System of county administration would be immune from application of the First Amendment at all public hearings because County Judges have some statutory judicial authority even if they never exercise it. Permitting Defendant to make an end run around the First Amendment of this magnitude would obliterate any plaintiff's hope of challenging unlawful restrictions of speech on any ground at a Commissioner's Court. Application of judicial immunity to judge-administrator hybrids in the Texas system admits no logically coherent limiting principle that allows even a modicum of First Amendment protection to survive.

58.     Unless this Court seeks to conclude that Commissioners' Courts are a *sui generis* category of government body where the First Amendment does not apply, Defendant's request for judicial immunity must be denied.

### D. Plaintiff's Claims under the Texas Constitution should not be dismissed.

59.     Article 1, section 8 of the Texas Constitution states: "FREEDOM OF SPEECH AND PRESS; LIBEL. Every person shall be at liberty to speak, write or publish his opinions on any

subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."

60.    Article 1, section 27 of the Texas Constitution states: "RIGHT OF ASSEMBLY; PETITION FOR REDRESS OF GRIEVANCES. The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

61.    The Texas Government Code requires that "[a] governmental body shall allow each member of the public who desires to address the body regarding an item on an agenda for an open meeting of the body to address the body regarding the item at the meeting before or during the body's consideration of the item." Texas Government Code § 551.007. Further, "a governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." *Id.* The Government Code does not state that citizens may only criticize the body as a whole or allow prior restraint of criticism of individuals.

62.    The requirements of Article I, § 27 of the Texas Constitution are satisfied when a government body provides an open forum at board meetings during which speakers have had an opportunity to present their grievances. *Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 707 (Tex. App.—Corpus Christi 1986, no writ).

63.    Contrary to Defendant's assertions on pages 19-20 of his Motion, Plaintiff does not seek damages under the Texas Constitution for violations of free speech and has requested no damages on these grounds. This section of the Motion appears to be based on the Original Motion.

**PRAYER**

Plaintiff prays that the Court deny Defendant's Motion and grant all other relief to which he is entitled.

Respectfully submitted,

Norred Law, PLLC.
By: /s/ *Warren V. Norred*
Warren V. Norred, TBN 24045094; warren@norredlaw.com
515 East Border Str.; Arlington, TX 76010
P: 817-704-3984; F: 817-524-6686
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 15, 2025, I electronically filed the preceding with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Iglesias Law Firm, PLLC
David Iglesias, david@iglesiaslawfirm.com
James A. Evans III, jim@iglesiaslawfirm.com
605 Chase Drive, Suite 8; Tyler, Texas 75701
*Counsel for Defendant*

*/s/Warren V. Norred*
Warren V. Norred