# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | | |
|---|---|---|
| **STEVE BIGGERS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-CV-0359-P** |
| | § | |
| **RON MASSINGILL,** | § | |
| **Defendant.** | § | |

## <u>PLAINTIFF'S TRIAL BRIEF</u>

**TO THE HONORABLE MARK PITTMAN, UNITED STATES DISTRICT JUDGE:**

Plaintiff Steve Biggers files this trial brief against Hood County Judge Ron Massingill, in his individual capacity, for actions taken under color of state law to deprive Plaintiff of his constitutionally protected rights, including his right to exercise freedom of speech and right to petition the government, protected by the First Amendment. Plaintiff also shows that Defendant is not entitled to qualified immunity and that all other affirmative defenses asserted by Defendant fail as a matter of law.

**SUMMARIZING,** Plaintiff has spoken at the Hood County Commissioners Court from time to time since 2022. His speech drew the personal ire of Defendant Massingill, who has illegally abused his position and, under color of law, illegally forced Plaintiff to leave public meetings, which the public were invited to attend, based on the content of Plaintiff's speech, which at worst can be characterized as mildly critical of Massingill and his allies. At the same time, Massingill allowed similarly critical language to be directed at his political enemies.

Defendant infringed Plaintiff's right to free speech and right to petition, guaranteed by the First Amendment, which also protects him from retaliation for the exercise of his constitutionally protected rights. Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

# I.    TABLE OF CONTENTS

I.    TABLE OF CONTENTS ................................................................................................2

II.   TABLE OF AUTHORITIES ........................................................................................3

III.  TRIAL EVIDENCE .....................................................................................................4

IV.   FACTUAL BACKGROUND .......................................................................................4

V.    PROPOSITIONS OF LAW FOR PLAINTIFF'S § 1983 CLAIMS ...........................8

VI.   PLAINTIFF'S CLAIMS ARE SUBSTANTIATED AND IMMUNITY DOES NOT BAR
      RECOVERY ................................................................................................................10

      A.   The evidence shows that the elements of Plaintiff's § 1983 claim are met. ...................10
      B.   Sovereign Immunity does not bar Plaintiff's claims. ................................................14

VII.  DEFENDANT'S AFFIRMATIVE DEFENSES DO NOT BAR RECOVERY ......................16

      A.   The affirmative defense of "not liable for punitive damages" does not bar recovery .............16
      B.   The affirmative defense of Qualified Immunity does not bar recovery. ................................17
      C.   The affirmative defense of Official Immunity does not bar recovery. ..................................19
      D.   The affirmative defense of *Monell* immunity does not bar recovery. .................................21
      E.   The affirmative defenses of Comparative Fault and Contributory Negligence do not bar
           recovery. ..........................................................................................................22
      F.   The affirmative defense of Intervening or Superseding Cause does not bar Plaintiff's recovery. 23
      G.   The affirmative defense of Lack of Control does not bar Plaintiff's recovery. .........................24
      H.   The affirmative defense of New and Independent Causes does not bar Plaintiff's recovery..........25
      I.   The affirmative defense of Mitigation of Damages does not bar recovery. ...............................25
      J.   The affirmative defense of Sole Cause does not bar Plaintiff's recovery ................................26
      K.   Defendant's assertion of failure to state a claim does not bar recovery .................................27
      L.   All references to Hood County's liability should be denied as a matter of law .............................28
      M.   Defendant's assertion of Offset does not bar recovery ....................................................28
      N.   The Texas Tort Claims Act affirmative defense should not bar recovery....................................28
      O.   Absolute Judicial Immunity should not bar recovery........................................................29
      P.   Defendant's affirmative defense of Legislative Immunity does not bar recovery .........................29

VIII. DAMAGES ................................................................................................................29

IX.   ATTORNEYS' FEES................................................................................................29

X.    PRAYER ..................................................................................................................30

## II.    TABLE OF AUTHORITIES

**Cases**

*Baker v. McCollan*, 443 U.S. 137, 146 (1979) ...............................................................23

*Ballantyne v. Champion Builders*, 144 S.W.3d 417, 424 (Tex. 2004).............................21

*Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)....................12, 28

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999).........................16

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)................................21

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)..................................17

*Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 452 (Tex. 2006)........................26

*Ex parte Young*, 209 U.S. 123 (1908)..............................................................................16

*Fairchild v. Liberty ISD*, 597 F.3d 747, 760 (5th Cir. 2010) .........................................12

*Good News Club v. Milford Cent. Sch.*, 121 S. Ct. 2093, 2100 (2001) ...........................11

*Hafer v. Melo, 502* U.S. 21 (1991) ..................................................................................15

*Hafer v. Melo*, 502 U.S. 21, 28 (1991) ............................................................................25

*Howlett v. Rose*, 496 U.S. 356, 375 (1990) .............................................21, 23, 24, 26, 27, 29

*Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ..............................24, 26, 27

*Mason v. Faul*, 929 F.3d 762, 765 (5th Cir. 2019) ........................................................19

*Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277-78 (5th Cir. 2015) ......20

*McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) ..............................................19

*McDonald v. Smith*, 472 U.S. 479, 482, (1985)...............................................................9

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995).............................................10

*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) ..............................25

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).......................................................22

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009)..............................................................18

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)................13

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, (1983).............10

*Rolf v. City of San Antonio*, 77 F.3d 823, 827 n. 18 (5th Cir. 1996)...............................10

*Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 829 (1995) .........10, 12, 13, 18

*Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023)—............................................................................6, 11, 18

*Saucier v. Katz*, 533 U.S. 194, 202 (2001) .....................................................................18

*Smith v. Ark. State Highway Emps. Local 1315*, 441 U.S. 463, 465 (1979) ...................10

*Smith v. Wade*, 461 U.S. 30, 56 (1983)............................................................................17

*Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)..............................................19

*United States v. Cruikshank*, 92 U.S. 542 (1876)...........................................................9

*Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982)..............................23, 24, 26, 27

**Statutes**

42 U.S.C. § 1983 ...........................1, 9, 11, 15, 17, 21, 22, 23, 24, 25, 26, 27, 28, 29

42 U.S.C. § 1985(3)...........................................................................................................24

42 U.S.C. § 1988 ...............................................................................................................1

42 U.S.C. § 1988(b)...........................................................................................................30

Tex. Civ. Prac. & Rem. Code § 33 ...................................................................................23

**Other Authorities**

1 Annals of Cong. 738 (1789) ...........................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6) .....................................................................................................28

Fed. R. Civ. P. 8 ................................................................................................................28

**Constitutional Provisions**

U.S. Const. amend. I.........................................1, 8, 9, 10, 11, 12, 13, 15, 18, 27

### III.    TRIAL EVIDENCE

1.      Plaintiff Steve Biggers relies on the following evidence in the attached appendix to support this motion, incorporated by reference in full:

Exhibit 1: Public Comment Rule

Exhibit 2: Declaration of Steve Biggers

Exhibit 3: March 8, 2022 HCCC Recording

Exhibit 4: March 22, 2022 HCCC Recording

Exhibit 5: April 26, 2022 HCCC Recording

Exhibit 6: October 25, 2022 HCCC Recording

Exhibit 7: December 13, 2022 HCCC Recording

Exhibit 8: January 10, 2023 HCCC Recording

Exhibit 9: Hot Mic Recording

Exhibit 10: Minutes of March 22, 2022, Meeting

Exhibit 11: Minutes of April 26, 2022, Meeting

Exhibit 12: Minutes of October 25, 2022, Meeting

Exhibit 13: Minutes of December 13, 2022, Meeting

Exhibit 14: Minutes of January 10, 2023, Meeting

Exhibit 15: Plaintiff's Attorney Fee Documentation

Plaintiff respectfully requests that this Court take judicial notice of the Court's own records, including all prior filings in this case.

### IV.    FACTUAL BACKGROUND

2.      On February 9, 2021, the Hood County Commissioners Court adopted its public comment rule, which governed the meetings discussed herein (Exhibit 1, "Public Comment Rule"). The Public Comment Rule allows public comment on agenda items at all meetings, and permits

comment on non-agenda items during the first regularly scheduled meeting of the Commissioners' Court of each month. The Public Comment Rule created a limited public forum for citizen speech on matters of public concern. Exhibit 1; 2, ¶4.

3.      The rule used language similar to verbiage approved in *Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023):

> **F.**     It is not the intention of the Hood County Commissioners' Court to provide a public forum for the demeaning of any individual or group.  Neither is it the intention of the Court to allow a member (or members) of the public to insult the honesty and/or integrity of the Court, as a body, or any member or members of the Court, individually or collectively.  Accordingly, profane, insulting or threatening language directed toward the Court and/or any person in the Court's presence and/or racial, ethnic, or gender slurs or epithets will not be tolerated. **These Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service.**

4.      On March 8, 2022, the first meeting of the Commissioners Court in March, Plaintiff spoke and gave each commissioner copies of the U.S. and Texas Constitutions. Exhibit 2, ¶3(b); Exhibit 3, March 8, 2022, Hood County Commissioners Court

5.      Plaintiff spoke again on March 22nd, about an agenda item relating to septic tanks. After Plaintiff concluded his remarks and sat down, Defendant began bantering with Plaintiff. Plaintiff eventually asked the court to take a vote, and Defendant told Plaintiff that he "came close to being out of order," and, "You can't tell us when to vote. We will vote at the proper time." Exhibit 2, ¶3(b); Exhibits 4 and 10, March 22, 2022, Hood County Commissioner's Court.

6.      On April 26, 2022, Plaintiff referred to former Commissioner Ron Cotton by name while speaking about a specific agenda item, making factual statements regarding Cotton's prior actions as a public official. Defendant interrupted Plaintiff, accused him of attacking Cotton, and then directed Sheriff Deeds to escort Plaintiff out of the meeting, refusing to allow Plaintiff to finish his remarks within his remaining time. During that same meeting, another speaker was permitted to criticize Commissioner Eagle, a political opponent of Defendant, including making allegations

of a violent attack, without any interruption or threat of removal by Defendant. This disparate treatment demonstrates viewpoint discrimination. Exhibit 2, ¶3(c); Exhibits 5 and 11, April 26, 2022, Hood County Commissioner's Court.

7.    Defendant's pattern of hostility continued during the October 25th meeting, in which he singled out Plaintiff from the audience in order to criticize him for the way he ran the Hood County Republican Party meetings, despite no agenda items pertaining to that issue. Exhibit 2, ¶3(d); Exhibits 6 and 12, October 25, 2022 Hood County Commissioner's Court

8.    In the minutes immediately preceding the opening of the November 8, 2022, meeting of the Commissioners Court, Defendant was recorded on a "hot mic" making statements that he believed were private but were in fact recorded and later became public. A different commissioner initiated the conversation with Judge Massingill about the Plaintiff by saying, "So you got to understand Biggers' wife's daddy, the one who started that church. But they're fixing to split, by the way, because people are not [wanting to], tired of putting up with what Biggers throwin' in." Exhibit 9, Hot Mic at 4:00 to 4:13. Judge Massingill responds by saying, "Well, I guess so." Exhibit 9, Hot Mic at 4:14. Then Judge Massingill, without prompting, stated, "Imagine that. That guy's so ni-, he likes me so much. I had him thrown out of here right before the election. The big chair. He says he's the most important guy." This statement demonstrates that Defendant's decision to remove Plaintiff was motivated by political considerations related to the upcoming election and personal animus toward Plaintiff. Exhibit 9, Hot Mic at 4:19-4:31.

9.    Judge Massingill further stated, "**In Hood County. Well, we're goin' find out how that is 'cause we're starting a new opportunity, Bobby. Soon as this'n election over, there's gonna be a new one and there's not gonna be no crazies there, we're goin' back [*sic*] our basic core values. So.**" Exhibit 9 at 4:33–4:48.

10.     Judge Massingill referred to Plaintiff as a "crazy" and stated implied that he was proud of throwing Plaintiff out of the Commissioner's Court. This demonstrates animus toward Plaintiff based on the content and viewpoint of his speech, evidencing discriminatory enforcement of the Public Comment Rule.

11.     On December 13, 2022, the first regular meeting of the month, Plaintiff was entitled under the Public Comment Rule to speak to the court on the subject of his choice for five minutes. As he began to address the November Recording in which Defendant made derogatory statements about Plaintiff, he was interrupted by Defendant and threatened with removal. Exhibits 7 and 13, December 2022 Hood County Commissioner's Court. Plaintiff was not allowed to continue his remarks, or to play the November Recording where Defendant spoke about Plaintiff and other county residents. Exhibit 2, ¶3(f); Exhibits 7 and 13, December 2022 Hood County Commissioner's Court.

12.     On January 10, 2023, the first regular meeting of the Commissioners Court of the month, Plaintiff attempted to speak during the open public comment section to address the November Recording. Within seconds, and before Plaintiff violated any provision of the Public Comment Rule, Defendant commanded Sheriff Deeds to remove Plaintiff from the meeting; Plaintiff was unable to deliver his remarks or exercise his rights under the Public Comment Rule. Exhibit 2, ¶3(g); Exhibits 8 and 14, January 10, 2023, Hood County Commissioner's Court.

13.     The Public Comment Rule does not support Defendant's enforcement actions. Plaintiff did not demean any individual or group, use profane, insulting, or threatening language, nor use any slurs or epithets. Plaintiff's comments consisted of public criticism of Defendant's actions and conduct, which is protected speech under the First Amendment and not prohibited by the Public Comment Rule. Judge Massingill's actions chilled Plaintiff's speech and caused him to fear that he would be held in contempt and jailed if he attempted to engage in similar speech in the future.

Plaintiff continues to suffer this ongoing chilling effect. As a result, Plaintiff has been deterred from attending and speaking at subsequent Commissioners Court meetings, depriving him of his constitutional rights on an ongoing basis. His freedom of speech and right to petition have been infringed.

### V.    PROPOSITIONS OF LAW FOR PLAINTIFF'S § 1983 CLAIMS

14.    As the Supreme Court has taught:

> The right to petition is cut from the same cloth as the other guarantees of [the First Amendment], and is an assurance of a particular freedom of expression. In *United States v. Cruikshank*, 92 U.S. 542 (1876), the Court declared that this right is implicit in "[t]he very idea of a government, republican in form." *Id*. at 552. And James Madison made clear in the congressional debate on the proposed amendment that people "may communicate their will" through direct petitions to the legislature and government officials. 1 Annals of Cong. 738 (1789).

*McDonald v. Smith*, 472 U.S. 479, 482, (1985).

15.    42 U.S.C. § 1983 provides a private cause of action against those who, acting under color of state law, deprive a person of "any rights, privileges, or immunities secured by the Constitution and laws." To prevail on a § 1983 claim, Plaintiff must establish: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. Here, Defendant Massingill was acting under color of state law as Hood County Judge when he ordered Plaintiff's removal from public meetings of the Commissioners Court. Plaintiff brings this action against Defendant in his individual capacity only, not his official capacity, and seeks compensatory damages, punitive damages, attorneys' fees and costs, and declaratory relief as appropriate for individual-capacity claims under § 1983.

16.    Plaintiff sought to petition his government about matters of public concern during public comment periods at Commissioners Court meetings. His speech and comments are protected under the First Amendment.

17.     "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, (1983). However, the state may impose reasonable time, place, and manner restrictions, which must be "content-neutral, [and] narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*

18.     "Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 829 (1995).

19.     The First Amendment to the United States Constitution guarantees the right of United States citizens to petition their government for redress, which includes the right to do so without the government retaliating against the petitioner. The First Amendment applies to the states via the Fourteenth Amendment's due process clause. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Rolf v. City of San Antonio*, 77 F.3d 823, 827 n. 18 (5th Cir. 1996).

20.     The right to petition recognizes citizens' freedom to "petition openly," but "the First Amendment does not impose any affirmative obligation on the government to listen, to respond..." *Smith v. Ark. State Highway Emps. Local 1315*, 441 U.S. 463, 465 (1979). Nevertheless, once the government creates a forum for public comment, it cannot discriminate based on viewpoint in regulating access to that forum.

21.     Limited public forums provide for public expression for certain groups or for the discussion of certain topics. Such forums are subject to a lower standard of review than traditional and designated public forums. *Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P,

2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023) (citing *Good News Club v. Milford Cent. Sch.*, 121 S. Ct. 2093, 2100 (2001)).

## VI.    PLAINTIFF'S CLAIMS ARE SUBSTANTIATED AND IMMUNITY DOES NOT BAR RECOVERY.

### A.  The evidence shows that the elements of Plaintiff's § 1983 claim are met.

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

U.S. Const. amend. 1.

22.    Plaintiff's speech to the Commissioners Court during public comment periods constitutes protected speech under the First Amendment to the United States Constitution. The Commissioners Court meetings, particularly during public comment periods, constitute a limited public forum. Defendant, acting under color of state law in his individual capacity, violated Plaintiff's clearly established First Amendment rights in the following ways: (1) engaging in viewpoint-based discrimination by removing Plaintiff for criticism while allowing others to make similar criticisms of Defendant's political opponents; (2) employing prior restraint by preventing Plaintiff from speaking; and (3) retaliating against Plaintiff for exercising his First Amendment rights. These actions were not justified by any legitimate time, place, or manner restriction, nor were they necessary to maintain order or decorum. The undisputed evidence establishes each violation as a matter of law.

23.    To prevail under 42 U.S.C. § 1983 for a First Amendment retaliation claim, Plaintiff must show (1) he engaged in constitutionally protected speech or petitioning activity; (2) the defendant took an adverse action against him that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was substantially motivated as a response to

the plaintiff's exercise of constitutionally protected conduct. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Each element is conclusively established on this record.

24.    **Protected Speech** – Plaintiff's remarks to the Commissioners Court addressed matters of public concern, including government transparency, official conduct, and public integrity. The Public Comment Rule itself invited citizen participation and permitted discussion of non-agenda items during designated meetings. Plaintiff registered to speak in advance, complied with all of the rule's reasonable time, place, and manner restrictions, and voiced criticism of local officials regarding matters of legitimate public interest. Speech critical of public officials at a public meeting lies at the core of the First Amendment. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995). The undisputed evidence establishes that Plaintiff's comments fell squarely within protected expression and violated no content-neutral rule of decorum.

25.    **Adverse Action** – Defendant's repeated interruptions, threats of removal, and actual ejection of Plaintiff from public meetings constitute concrete adverse actions that would deter an ordinary citizen from speaking again. *See Fairchild v. Liberty ISD*, 597 F.3d 747, 760 (5th Cir. 2010). He ordered the Sheriff to remove Plaintiff from the podium, terminated his allotted speaking time, and publicly humiliated him for expressing disfavored viewpoints. Those actions directly deprived Plaintiff of access to the forum and chilled both his own speech and that of other citizens who witnessed the retaliation.

26.    **Causation and Retaliatory Motive** – The evidence, including Defendant's own recorded statements, proves retaliatory intent beyond any genuine dispute of material fact. On a "hot mic" before the November 8, 2022, meeting, Defendant boasted: "That guy … he likes me so much. I had him thrown out of here right before the election." (Exhibit 9, Hot Mic at 4:19–4:31.) Moments later, referring to Plaintiff, he stated he would start new elections "and there's not gonna be no crazies there." (Exhibit 9, Hot Mic at 4:33–4:48.) Those statements are not stray remarks; they

constitute direct admissions of retaliatory motive and demonstrate Defendant's discriminatory intent. They reveal that Defendant viewed Plaintiff as a political adversary and took pride in silencing him for his viewpoint. The timing also confirms causation: Defendant threatened removal when Plaintiff tried to discuss that same recording at the next two meetings, and finally ordered his physical ejection when Plaintiff again attempted to speak about the matter. No neutral, content-neutral rule explains this pattern of conduct. The retaliation flowed directly from viewpoint-based animus and personal hostility toward Plaintiff's protected speech, not from any actual disruption or violation of any legitimate decorum rule.

27.     Together, these facts satisfy every element of a First Amendment retaliation claim. Plaintiff engaged in protected speech; Defendant, acting under color of state law, imposed a tangible and chilling penalty; and the "hot mic" recording provides direct evidence that the adverse action was substantially motivated by Plaintiff's exercise of constitutionally protected speech. Viewpoint discrimination is "an egregious form of content discrimination," *Rosenberger*, 515 U.S. at 829, and no government interest justifies it.

28.     Defendant has exceeded the scope of the Public Comment Rule by implementing viewpoint-based restrictions in this limited public forum in an unconstitutional manner. Even in a limited public forum, any restrictions must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). The undisputed evidence establishes that Defendant's conduct was not content-neutral, was not narrowly tailored to any legitimate government interest, and did not constitute the least restrictive means available to address any legitimate concern. Defendant's actions were viewpoint-based discrimination, which is per se unconstitutional.

29.    Defendant cannot justify his unconstitutional conduct by invoking the Public Comment Rule. The undisputed evidence establishes that Plaintiff did not violate any legitimate rule of decorum when he sought to address the Commissioners Court regarding matters of public concern. He did not use profane, threatening, or insulting language, make any slurs, or use any epithet or vulgarity. The record contains no evidence of any disruption, disorder, or violation of any content-neutral rule. Plaintiff had a clearly established constitutional right to publicly criticize the Commissioners Court, including the actions of Defendant, so long as he complied with reasonable, viewpoint-neutral restrictions on time, place, and manner, which he indisputably did.

30.    Defendant's policy of refusing to allow Plaintiff to speak at designated public comment periods, while allowing others who do not criticize him to speak without similar limitations, constitutes impermissible viewpoint discrimination that cannot survive any level of constitutional scrutiny.

31.    Unless enjoined by this Court, Defendant will likely continue to violate Plaintiff's clearly established constitutional right to speak at Commissioners Court meetings. Defendant has demonstrated personal animus toward Plaintiff and has publicly bragged about having Plaintiff removed, as evidenced by the November 8, 2022 recording. This ongoing threat of constitutional violation satisfies the irreparable harm requirement for injunctive relief.

32.    Defendant's conduct has chilled the exercise of First Amendment rights of would-be public participants in Hood County, is patently discriminatory and illegal, and prevents important matters of concern to the public from being openly discussed before the Commissioners Court.

33.    Plaintiff has no adequate remedy at law because the constitutional injuries he has suffered and continues to suffer—including the ongoing chilling effect on his First Amendment rights and the continuing threat of exclusion from public forums—are not capable of complete monetary compensation and require equitable relief to prevent future violations. Unless this court grants the

relief prayed for, Plaintiff will continue to suffer serious and irreparable damage to his constitutional rights.

34.    The undisputed material facts establish that Defendant violated Plaintiff's clearly established First Amendment rights. Plaintiff is entitled to prevail as a matter of law and fact on his 42 U.S.C. § 1983 First Amendment claim.

**B.  Sovereign Immunity does not bar Plaintiff's claims.**

35.    While sovereign immunity generally shields states and their agencies from suit, it does not protect county officials sued in their individual capacities under 42 U.S.C. § 1983 for constitutional violations. See *Hafer v. Melo, 502* U.S. 21 (1991). Plaintiff has not sued Defendant in his official capacity for monetary relief. Plaintiff's claims are brought exclusively against Defendant in his individual capacity, as clearly stated in the First Amended Complaint (ECF No. 13). Plaintiff brings claims for injunctive relief, declaratory relief, and damages against Defendant in his individual capacity for actions taken under color of state law that violated clearly established constitutional rights. That claim fits squarely within the well-recognized exception to sovereign immunity for personal-capacity claims.

36.    The Fifth Circuit has held repeatedly that local officials, including county judges, do not enjoy Eleventh Amendment immunity when sued in their individual capacities for unconstitutional conduct. The Supreme Court's decision in *Hafer v. Melo*, 502 U.S. 21, 30 (1991), made this point clear: state actors cannot invoke sovereign immunity to escape liability for their deprivation of others' federal constitutional guarantees. Defendant argues that Plaintiff's claims somehow amount to a challenge against the state itself. That argument ignores both the nature of the relief sought and the conduct at issue. Defendant acted on his own initiative, not as an agent executing a state directive.

37.     Even if this Court were to construe part of Plaintiff's request as an official-capacity claim for injunctive relief, sovereign immunity would not bar such prospective relief under *Ex parte Young*, 209 U.S. 123 (1908), which permits suits against state officials in their official capacities to enjoin ongoing violations of federal law.[1] The doctrine does not shield officials who violate federal rights while enforcing local policies in a discriminatory manner. Defendant used his role as a county judge to target Plaintiff's speech based on viewpoint. That sort of retaliatory conduct, directed at a citizen during a public-comment period, falls well outside the protection of sovereign immunity.

---

[1] However, county officials, as opposed to state officials, are not considered "arms of the state" for Eleventh Amendment purposes under Fifth Circuit precedent, and therefore *Ex parte Young* may not be necessary to this analysis. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999).

## VII.    DEFENDANT'S AFFIRMATIVE DEFENSES DO NOT BAR RECOVERY.

### A.  The affirmative defense of "not liable for punitive damages" does not bar recovery (ECF No. 58, pp. 10, ¶ 1).

38.    Judge Massingill argues that he cannot be liable for punitive damages "to the extent he is sued in his official capacity." The argument fails for three independent reasons.

39.    First, Plaintiff sues Judge Massingill only in his individual capacity. ECF No. 13 at 1. The pleadings identify no official-capacity claim for monetary relief. The only remaining cause of action arises under 42 U.S.C. § 1983, and it seeks damages from the defendant personally for conduct committed under color of law. Because no official-capacity claim exists, the limitation he cites is irrelevant. This defense therefore attacks a claim that no longer exists.

40.    Second, punitive damages are available in § 1983 actions against those whose conduct shows reckless or callous indifference to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). When a public official deliberately violates the Constitution, the jury may award punitive damages to deter such misconduct and to punish conscious disregard of constitutional rights. The evidence here, particularly the "hot-mic" recording where Defendant boasted that he "had [Plaintiff] thrown out … right before the election," shows intentional retaliation, not inadvertent error. That admission demonstrates both awareness of wrongdoing and pleasure in it. Such conduct epitomizes the "reckless or callous indifference" standard in *Smith v. Wade*.

41.    Third, official-capacity immunity from punitive damages does not extend to individual-capacity suits. The Supreme Court has drawn this line plainly: a municipality or governmental entity is immune from punitive damages under § 1983, but officials sued in their individual capacities are not. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *cf. Smith v. Wade*, 461 U.S. 30, 56 (1983). By invoking the wrong capacity, Defendant misstates the law. He cannot borrow a municipality's immunity to shield personal misconduct.

42.    Because Plaintiff asserts only an individual-capacity claim and because federal law authorizes punitive damages against individual defendants who intentionally violate constitutional rights, this affirmative defense lacks both legal and factual support. This Court should reject the defense of "no liability for punitive damages."

**B.  The affirmative defense of Qualified Immunity does not bar recovery. (ECF No. 58, pp. 10, ¶ 2).**

43.    Defendant Massingill asserts that qualified immunity protects him from Plaintiff's claims, alleging that Massingill was performing discretionary duties in good faith. Qualified immunity protects government officials who make reasonable mistakes while performing discretionary duties. Qualified immunity "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) *(citing Saucier v. Katz*, 533 U.S. 194, 202 (2001))*.* It does not protect officials who violate clearly established constitutional rights. *Id.* Here, Defendant violated the First Amendment by ejecting Plaintiff from public meetings because of the content of his speech. The record shows that Plaintiff followed the forum's time, place, and manner restrictions. Defendant silenced him anyway openly, repeatedly, and without lawful justification.

44.    By 2022, the law was clearly established that viewpoint discrimination in a limited public forum violates the First Amendment. See *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Courts have long recognized that citizens enjoy a protected right to criticize public officials during designated public-comment periods, which this Court has affirmed in *Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478 (N.D. Tex. 2023). Defendant cannot credibly argue that he lacked notice that retaliating against protected speech is unlawful. He barred Plaintiff from speaking because Plaintiff criticized him. No reasonable official would believe that action to be lawful.

45.    Qualified immunity does not excuse brazen retaliation for constitutionally protected speech. Defendant did not act to preserve order, apply a neutral rule, or prevent disruption. He acted to punish criticism. That is why this case does not hinge on disputed facts. The material facts are undisputed, the law is clear, and no reasonable official in Defendant's position could have believed that ejecting a speaker for criticizing public officials during a designated public comment period was lawful.

46.    Furthermore, as the Fifth Circuit's Pattern Jury Charge teaches in footnote one of its Qualified Immunity instruction,

> Instructing a jury on qualified immunity can present difficult—and often fact-based—decisions for the court. The qualified-immunity issue "ordinarily should be decided by the court long before trial . . . ." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000). But "if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy*, 203 F.3d at 376 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)). In most cases in which qualified immunity remains an issue at trial, the court will have found some underlying factual dispute that precluded a pretrial ruling. Sometimes the factual disputes are easy to define and lend themselves to a clean instruction on what constitutes clearly established law (e.g., whether the suspect had a gun). It seems inevitable in those circumstances that the instruction on what constitutes clearly established law may appear to be peremptory. Other cases present more complicated fact patterns that make it difficult to frame the issues and instruct on the clearly established law. There is no way to draft a pattern instruction that covers every scenario. The pattern instruction provides only the basic law and leaves it to the judge to craft a complete instruction that fits the facts of the case. Nevertheless, the Fifth Circuit has expressly approved the language in Instruction 10.3. *See Mason v. Faul*, 929 F.3d 762, 765 (5th Cir. 2019) (per curiam) (upholding jury charge on excessive force and qualified immunity where the questions "were precisely and almost verbatim stated according to the Fifth Circuit Pattern Jury Instruction (Civil) 10.1 and 10.3."), cert. denied, — S. Ct. — (2020).

P.C.J. 10.3.

47.    However, in the facts at bar, it is perhaps impossible to comply with the Fifth Circuit's holding in *Mason*, even if the Fifth Circuit Pattern Jury Charge language is used verbatim, due to the vast factual chasm that separates the two cases.

48.    In *Mason*, the court examined an affirmative defense of qualified immunity raised by Officer Faul, who tragically shot to death Quamaine Mason under circumstances that were the subject of numerous and conflicting witness statements and expert opinions. The shooting was precipitated by a 911 call to the Lafayette, Louisiana police about a possible armed robbery. Faul arrived at the scene with his canine and saw two other officers with weapons drawn on Mason and his former girlfriend. Faul was within three to six feet of the suspect. Alarmed by what he thought were Mason's sudden movements toward a gun in his waistband, Faul released the dog and began to fire. As the dog attacked him, Mason was hit five times in his side and front, then after a brief pause where he had fallen face down, an additional two times. The Fifth Circuit specifically noted that it found material fact issues concerning the availability of qualified immunity for Faul's final two shots. *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277-78 (5th Cir. 2015) ("Mason I").

49.    However, unlike the *Mason* cases, which involved material fact issues concerning the number and propriety of Officer Faul's shots and subsequent conduct, here the conduct of Judge Massingill is recorded on video and there exists no factual dispute at all in this case – the recordings of the events eliminate any ambiguity about what party made what statement, or took what action. The only questions are the legal ramifications of the statements made and the actions taken. Thus, there are no factual disputes left for the jury on the defense of qualified immunity; the question is ripe for the Court, and the jury should not be burdened with adjudicating that which the Court is obligated to resolve.

## C.  The affirmative defense of Official Immunity does not bar recovery (ECF No. 58, pp. 10, ¶ 3).

50.    Defendant asserts the affirmative defense of *official immunity* for his state-law conduct, claiming that he acted in good faith while performing discretionary duties within the scope of his authority. That defense collapses under both fact and law.

51.     First, no viable state-law claim remains in this action, rendering official immunity inapplicable. Plaintiff has voluntarily dismissed all state-law causes of action. ECF No. 57. Only Plaintiff's federal § 1983 claim proceeds, and *official immunity* does not apply to federal constitutional claims. *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("Conduct … wrongful under § 1983 cannot be immunized by state law."). Federal law defines the defenses available in a § 1983 action. State immunity doctrines cannot erase a federal right of recovery.

52.     Second, even if any residual state-law claim existed, the facts destroy the defense on its own elements. Official immunity shields a government official only when he proves (1) a discretionary function, (2) performed in good faith, (3) within the scope of authority. *Ballantyne v. Champion Builders*, 144 S.W.3d 417, 424 (Tex. 2004).

53.     Defendant's order removing Plaintiff was not a *discretionary* act within legitimate authority; it was an ultra vires abuse of power exercised for personal retaliation in violation of clearly established constitutional rights. A county judge has no lawful discretion to silence a citizen because he dislikes the citizen's viewpoint. Such conduct exceeds the outer bounds of official duty and violates the Constitution itself. Nor was the act performed in *good faith*. Good faith requires an objectively reasonable belief that the conduct is lawful. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (holding that good faith belief in an immunity context must be objectively reasonable). The record, particularly Defendant's own "hot-mic" admission that he "had [Plaintiff] thrown out … right before the election," demonstrates retaliatory intent and negates any claim of good faith. No reasonable official could believe that ejecting a speaker for protected political speech is lawful.

54.     Finally, Defendant acted outside his *scope of authority*. Presiding over public comment does not grant authority to suppress speech based on content or viewpoint. By weaponizing his office to silence dissent, he stepped outside his lawful role and into personal liability.

55.    Because state-law official immunity does not reach federal § 1983 claims, and because the undisputed facts negate each element even if it did, this Court should reject the affirmative defense of Official Immunity.

**D.  The affirmative defense of *Monell* immunity does not bar recovery (ECF No. 58, pp. 10, ¶¶ 5–6).**

56.    Defendant's Answer (ECF No. 58) cites *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for the proposition that he is not liable to Plaintiff for damages for violations of First Amendment Free Speech guarantees because Plaintiff cannot show that Defendant's actions satisfy the "policy, custom, or practice" test in *Monell*. However, *Monell* does not apply to this action because Plaintiff is suing Defendant as an individual and not as a local government.

57.    *Monell* governs municipal liability under Section 1983. It does not apply to suits against officials of the local government. A plaintiff who seeks damages from a county official sued in his individual capacity for his own unconstitutional act, such as removing a speaker during a public comment period, need not plead or prove any official policy or custom. The judge acted as an individual under color of state law. That suffices for Section 1983 liability. *Monell* limits when a municipality may face liability. It does not restrict Plaintiff's ability to sue a public official who abuses his position within the local government to personally violate the Constitution.

58.    *Monell* prohibits vicarious liability for municipalities but does not insulate individual officials sued in their individual capacity who wield state power to suppress speech. A county judge who silences a critic during the speaker's designated time does not merely enforce policy. He exercises personal discretion and violates clearly established First Amendment rights.

59.    Courts have long recognized that individuals bear personal responsibility under Section 1983 when they violate constitutional protections. The claim in this case arises from the judge's deliberate act, not from any county-wide policy. *Monell* does not enter this equation.

60.    Even if Defendant points to a policy, such as the Public Comment Rule, that argument fails because no policy can authorize viewpoint-based discrimination in a designated public forum. The county cannot adopt a policy that authorizes viewpoint discrimination in a designated public forum. The Constitution forbids it. No policy can justify the removal of a speaker solely for expressing criticism of public officials. The judge acted on his own authority and crossed a constitutional line. Section 1983 holds him accountable for that decision. *Monell* does not protect him and never has.

**E. The affirmative defenses of Comparative Fault and Contributory Negligence do not bar recovery (ECF No. 58, pp. 10, ¶ 7).**

61.    Defendant Massingill's reliance on comparative fault and contributory negligence misconstrues the nature of this action. Section 1983 is a federal cause of action, created by Congress to remedy constitutional violations committed under color of state law. Federal law exclusively governs its elements and its defenses. The Supreme Court has made this explicit: "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990).

62.    Comparative fault and contributory negligence are creatures of state law. Texas codifies comparative fault in Chapter 33 of the Civil Practice and Remedies Code, where it governs causes of action based on tort. But § 1983 liability does not arise from tort duties of care; it arises from constitutional violations. The Fifth Circuit has recognized the distinction:

> "Although the Supreme Court has stated that section 1983 must be 'construed against a background of common law tort principles,' … the Court has refused to transform state common law tort liability into federal constitutional tort liability. As the Supreme Court stated in *Baker v. McCollan*, 443 U.S. 137, 146 (1979), 'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.' Heeding the Supreme Court's advice, this Court has held that proof that a government official acted in good faith **will not enable the official to avoid liability under state common law principles."**

*Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982) (cleaned up, emphasis added).

63.    Federal law therefore provides the only valid defenses to a § 1983 claim, defenses such as qualified immunity, absolute immunity, or lack of personal involvement. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct ... wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."). Plaintiff is unaware of any federal case recognizing comparative fault as a § 1983 defense, and allowing it here would import a state-law negligence regime into a federal constitutional framework.

64.    Constitutional rights violations are not subject to apportionment of fault. Defendant either violated Plaintiff's First Amendment rights or he did not. Because comparative fault is not a federal affirmative defense and because this claim does not sound in negligence, the defense fails as a matter of law. This Court should reject Defendant's reasoning and should strike the comparative-fault and contributory negligence defenses.

**F.  The affirmative defense of Intervening or Superseding Cause does not bar Plaintiff's recovery (ECF No. 58, pp. 10, ¶ 8).**

65.    Defendant asserts Intervening or Superseding Cause against Plaintiff's claim. This defense also fails because § 1983 is a federal cause of action governed by federal law, not by state tort doctrines of proximate cause. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). The Supreme Court and Fifth Circuit have made clear that federal civil-rights liability turns on whether the defendant's own conduct, under color of law, violated rights protected by the Constitution—not on state concepts of causation or fault apportionment. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982). As *Williams* explains, § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." A "superseding cause" defense arises only in negligence cases to limit damages when an unforeseeable event breaks the causal chain. This claim alleges intentional retaliation for protected speech, not negligence. No independent act intervened between

Defendant's decision to silence Plaintiff and the resulting constitutional injury. State-law causation doctrines have no place here, and this defense fails as a matter of law.

66.     Even if the doctrine did apply, intervening cause requires an unforeseeable event that severs the causal chain. Nothing like that happened here. Defendant acted predictably and with animus, recorded on a hot mic and displayed across months of meetings. Plaintiff followed procedure. Defendant retaliated. That is not intervention. That is motive. Defendant has the burden to offer more than a scintilla of evidence supporting this affirmative defense. He can offer no evidence. This Court should reject the affirmative defense of intervening or superseding cause.

**G. The affirmative defense of Lack of Control does not bar Plaintiff's recovery (ECF No. 58, pp. 11, ¶ 9).**

67.     Defendant asserts Lack of Control as an affirmative defense. This defense defies fact, law, and credulity. Defendant exercised direct and exclusive control over every action at issue. He presided over the meeting, enforced the speaking rules, and personally ordered Plaintiff's removal. He instructed the Sheriff to act; no other official possessed or exercised that authority. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), makes clear that § 1983 imposes liability on any person who, acting under color of state law, causes the deprivation of a federal right. Personal action under color of law is all the statute requires; control is inherent in that act. And as the Supreme Court confirmed in *Hafer v. Melo*, 502 U.S. 21, 28 (1991), officials sued in their individual capacities are personally liable for actions taken under color of state law.

68.     Further, Defendant bears the burden to produce more than a scintilla of evidence that he lacked control. There is no evidence that any superior issued orders, that any county policy compelled his conduct, or that any statute forced his hand. The record shows a discretionary, unilateral decision to silence a critic because of viewpoint. That act satisfies causation under § 1983 and leaves no room for a "lack of control" defense. This Court should reject the Lack of Control defense.

**H. The affirmative defense of New and Independent Causes does not bar Plaintiff's recovery. (ECF No. 58, pp. 11, ¶ 10).**

69.     This defense fails at the threshold because it does not apply to a federal cause of action. Section 1983 liability and its defenses are matters of federal law. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). State tort doctrines, whether labeled "new and independent cause," "superseding cause," or anything else, cannot redefine or limit a federally created remedy. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). As the Fifth Circuit explained, § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982). The concept of a "new and independent cause" belongs to state negligence law, where it may sever liability for accidental harms. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 452 (Tex. 2006). A constitutional tort under § 1983, by contrast, turns on deliberate action under color of state law that violates clearly established rights. It does not bend to negligence doctrines or state apportionment rules.

70.     Even if the doctrine applied, which it does not, the facts defeat it. Nothing intervened between Plaintiff's protected speech and Defendant's order to remove him from the meeting. No third party acted independently. No unforeseeable event interrupted the chain of causation. Plaintiff's ejection was the direct and predictable result of Defendant's command. There was nothing "new" and nothing "independent." The record shows a single actor exercising authority in retaliation for protected speech. That act alone caused the injury. The defense should be rejected as unsupported in both law and fact. This Court should reject the New and Independent cause defense.

**I.  The affirmative defense of Mitigation of Damages does not bar recovery (ECF No. 58, pp. 11, ¶ 12).**

71.     Defendant asserts the affirmative defense of Mitigation of Damages. This defense collapses under first principles. Mitigation of damages is a state-law doctrine that applies to ordinary torts and contract disputes, not to federal constitutional claims. Section 1983 creates a federal cause of action whose elements and defenses are defined by federal law. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). State-law doctrines cannot shrink a federally created right or limit the scope of its remedies. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). As the Fifth Circuit explained, § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982).

72.     Even if the doctrine somehow applied, the facts defeat it. Plaintiff could not "mitigate" the deprivation of his First Amendment rights by remaining silent or ceasing to attend public meetings. The harm lies in the unlawful restraint itself, not in any later decision by the speaker. Once the government silences protected expression, the injury is complete. Federal law requires no further effort from the victim to reduce that harm. The defense therefore fails as a matter of law. This Court should reject the affirmative defense of Mitigation of Damages.

**J.  The affirmative defense of Sole Cause does not bar Plaintiff's recovery (ECF No. 58, pp. 11, ¶ 13).**

73.     This defense fails as a matter of law because it rests on state tort principles that do not govern a federal cause of action. Section 1983 derives entirely from federal law, and its defenses are defined by federal, not state, rules. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). State-law doctrines like "sole cause" or "contributory negligence" belong to negligence litigation, not constitutional torts. As the Fifth Circuit has explained, § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Williams v. Thomas*, 692 F.2d 1032, 1035 (5th Cir. 1982); *see also Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). Federal courts do not reduce liability for constitutional wrongs by

shifting blame to the victim of a rights violation. The doctrine simply has no footing in the § 1983 framework.

74.    Even if the concept applied, the record grants no factual support. Defendant presided over the meeting, enforced the speaking rules, and gave the direct order that caused Plaintiff's removal. No third party exercised discretion or independent judgment. Plaintiff did nothing that could constitute a "sole cause" of his own constitutional injury. Plaintiff spoke during public comment, as the rules allowed. The only operative cause of harm was Defendant's retaliatory command, issued under color of state law. The evidence shows one actor, one decision, and one violation. That makes him the sole cause, not Plaintiff or any third party. See *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001). This Court should reject the affirmative defense of Sole Cause.

**K. Defendant's assertion of failure to state a claim does not bar recovery. (ECF No. 58, pp. 11, ¶ 14).**

75.    Defendant reasserts his already denied claim that Plaintiff has failed to state a claim upon which relief may be granted. This defense has already been raised, litigated, and denied. Rule 12(b)(6) permits a party to assert failure to state a claim either by motion before answering or within the first responsive pleading. Defendant did exactly that in his motion to dismiss, which was denied on June 3, 2025. See ECF No. 56. Having lost that challenge, Defendant cannot repackage the same argument as an affirmative defense. The Court's ruling established that Plaintiff's allegations, censorship, removal, and retaliation under color of state law, state a plausible claim for relief under § 1983. That determination is now law of the case.

76.    Even apart from the procedural bar, the defense is empty. "Failure to state a claim" is not a true affirmative defense; it is a pre-answer procedural device, not a factual matter on which Plaintiff bears the burden. The complaint meets every requirement of Rule 8: it pleads concrete acts, identifies the rights violated, and cites the correct statute. Having already been rejected once,

the defense adds nothing of substance. It should be stricken as redundant, immaterial, and foreclosed by the Court's prior order. This Court should reject "failure to state a claim."

**L.  All references to Hood County's liability should be denied as a matter of law (ECF No. 58, pp. 11–12, ¶¶ 17–21, 25, and 32–33).**

77.    Defendant wastes resources defending against Hood County's liability. The Court should dismiss all affirmative defenses or liability defenses asserted on behalf of Hood County. (ECF No. 58, pp. 11–12, ¶¶ 17–21, 25, and 32–33). Hood County is not a named defendant in this case, and Plaintiff has not alleged, pleaded, or sought relief against the county under any theory. Because the pleadings identify no claim, capacity, or remedy directed at Hood County, every defense invoking the county's immunity, policies, or customs is irrelevant and immaterial. This Court should reject those defenses in their entirety.

**M. Defendant's assertion of Offset does not bar recovery (ECF No. 58, pp. 13, ¶ 35).**

78.    Defendant asserts the doctrine of Offset to limit his damages liability. This defense fails as a matter of law. "Offset" is a doctrine of damages available only where two parties owe mutual, legally cognizable debts to one another. It has no application in a § 1983 action, which provides a federal remedy for the deprivation of constitutional rights, not a reciprocal exchange of obligations. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). Defendant has identified no statute, judgment, or transaction that could create a compensable debt owed by Plaintiff to him or to any governmental entity. There is no monetary relationship between the parties outside this lawsuit. Because the record contains no evidence of any countervailing debt or entitlement, and because the doctrine itself is inapplicable to federal constitutional claims, the offset defense should be stricken.

**N.  The Texas Tort Claims Act affirmative defense should not bar recovery. (ECF No. 58, pp. 13, ¶ 35).**

79.    Defendant asserts that the TTCA bars Plaintiff's state law claims against him. This defense fails as a matter of law. Plaintiff has voluntarily dismissed all state law claims against Defendant.

ECF No. 57. Only Plaintiff's federal § 1983 claim remains pending. Therefore, this Court should reject the affirmative defense of the TTCA.

**O. Absolute Judicial Immunity should not bar recovery (ECF No. 58, pp. 13, ¶ 37).**

80.    Defendant's assertion of absolute judicial immunity fails as a matter of law. The Court has already ruled that his conduct in presiding over public comment sessions of the Hood County Commissioners Court was not judicial in nature. ECF No. 56, Order at 5 ("Massingill's alleged actions are not protected by judicial immunity either … the public comment hearings do not represent a case or controversy being decided by the judiciary, and therefore Massingill made no decision within his 'judicial jurisdiction.'"). That ruling forecloses the defense. Having determined that the alleged conduct was administrative and not judicial, the Court need not revisit the issue.

**P. Defendant's affirmative defense of Legislative Immunity does not bar recovery (ECF No. 58, pp. 13, ¶ 38).**

81.    This defense also fails as a matter of law. The Court has already ruled that Judge Massingill's conduct was not legislative in nature. ECF No. 56, Order at 4–5 ("Massingill's actions were not legislative … the public comment hearings do not represent a case or controversy being decided by the judiciary … it is not 'in the sphere of legitimate legislative activity.'"). Under the law of the case doctrine, that finding forecloses the defense. Having determined that the acts at issue were administrative and executive, presiding over county business and enforcing speaking rules, the Court left no room for legislative immunity.

## VIII.    DAMAGES

82.    Plaintiff seeks compensatory damages in an amount not less than $250,000, as supported by his declaration attached as Exhibit 2 and incorporated herein by reference. Plaintiff also seeks punitive damages from Defendant in his individual capacity.

## IX.    ATTORNEYS' FEES

83.     Pursuant to 42 U.S.C. § 1988(b), Plaintiff seeks an award of his reasonable attorney's fees, costs, and expenses incurred in this action, to be awarded upon Plaintiff's success in this litigation, as detailed in counsel's declaration attached as Exhibit 15 and incorporated herein by reference.

## X.    PRAYER

CONSIDERING the foregoing, Plaintiff prays that this Court adjudicate the pending Plaintiff's Motion for Summary Judgment, at the least for the affirmative defenses, and to complete this case, award all relief to which Plaintiff is entitled, comprising:

a. An award of compensatory and punitive damages from Defendant in his individual capacity for his violations of Plaintiff's clearly established constitutional rights, or in the alternative, nominal damages;
b. An award of reasonable attorney's fees, costs, and expenses; and
c. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/Warren V. Norred*
Warren V. Norred, TBN 24045094, warren@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, Texas 76010
O: (817) 704-3984; F: (817) 524-6686
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE
I hereby certify on February 05, 2026, I filed a true copy of the foregoing document with its attachments via the Court's designated e-filing system which will send notice of the filing to all parties seeking service in this action.

*/s/Warren V Norred*
Warren V. Norred