UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**STEVE BIGGERS,**

Plaintiff,

v.

**No. 4:23-cv-00359-P**

**RON MASSINGILL,**

Defendant.

## OPINION & ORDER

Before the Court is Defendant Ron Massingill's Motion for Summary Judgment (ECF No. 71) and Plaintiff Steve Biggers's Motion for Summary Judgment (ECF No. 74). Having considered the filing, the applicable law, and other relevant docket filings, the Court will **GRANT** Judge Massingill's Motion and **DENY** Mr. Biggers's Motion.

## BACKGROUND

This case involves a dispute over the restrictions on speech during Hood County Commissioners'[1] Court meetings. Mr. Biggers maintains that Judge Massingill violated his First Amendment right to free speech by cutting off his remarks during three meetings in 2022 and 2023. Judge Massingill, as County Judge, presided over the meetings. The relevant facts follow.

### A. Rules governing conduct during Hood County Commissioners' Court meetings

The Hood County Commissioners' Court (also referred to hereinafter as "Commissioners' Court") has adopted rules governing decorum in

---

[1]Hood County uses the possessive form "Commissioners' Court," although the Texas Constitution, Texas statutes, and many other Texas counties use "Commissioners Court" without an apostrophe. Accordingly, this Court uses Hood County's preferred styling when referring specifically to the Hood County Commissioners' Court, but otherwise follows the non-possessive form.

meetings ("Rules"). Rules of Procedure, Conduct and Decorum at Meetings of the Hood County Commissioners' Court, ECF No. 73 at 9–13. The Rules delineate how the public may participate in the meetings.

There are two ways in which the public may speak at the meetings. *First*, the public may speak on a specific agenda item before the Commissioners' Court. ECF No. 73 at 9. Prospective speakers must complete a Public Participation Form identifying the agenda item on which he or she would like to speak. ECF No. 73 at 9–13. Comments are limited to that specific agenda item. ECF No. 73 at 5, 9–13. *Second*, members of the public may speak on matters not listed on the agenda during the first regularly scheduled Commissioners' Court of the month ("Public Comment"). ECF No. 73 at 10. During both forms of participation, speakers have a limited amount of time to speak. ECF No. 73 at 9–10.

While the Public Comment paragraph does not articulate content requirements for speakers, subsection E of the Rules do. Subsection E states the following:

> E. It is the intention of the Commissioners' Court to provide an open access to the citizens of Hood County to address the Commissioners' Court and **express themselves on issues of county governance** ... [M]embers of the public in attendance at any Regular, Special and/or Emergency Meeting of the Court **shall conduct themselves with proper respect and decorum** in speaking to and/or addressing the Court; in participating in public discussions before the Court; and in all actions in the presence of the Court. Those members of the public who are inappropriately attired and/or who do not conduct themselves in an orderly and appropriate manner will be ordered to leave the meeting.

ECF No. 73 at 10 (emphasis added).

Regardless of whether a speaker is speaking on an agenda item or during Public Comment, the speaker must abide by the rules of decorum. The Rules set forth the requirements for decorum and the procedure for violations. ECF No. 73 at 10–11. Section IV(F) states:

> F. It is not the intention of the Hood County Commissioners' Court to provide a public forum for the demeaning of any individual or group. Neither is it the intention of the Court to allow a member (or members) of the public to insult the honesty and/or integrity of the Court, as a body, or any member or members of the Court, individually or collectively. Accordingly, profane, insulting or threatening language directed toward the Court and/or any person in the Court's presence and/or racial, ethnic, or gender slurs or epithets will not be tolerated. **These Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service.**

ECF No. 73 at 10 (emphasis in original). Possible sanctions include cancellation of the speaker's time; removal of the speaker; contempt citation; and/or other civil or criminal sanctions authorized by law. ECF No. 73 at 10–11.

## B. Mr. Biggers's conduct and Judge Massingill's response

Mr. Biggers is no stranger to the Hood County Commissioners' Court. The relevant meetings at which he spoke are detailed below.

### 1. March 8, 2022 Meeting

The March 8, 2022 meeting began with Public Comment. Mr. Biggers was the first speaker to take the podium. HOOD COUNTY, *March 8, 2022 Hood County Commissioners' Court*, at 08:15 (YouTube, Mar. 15, 2022), https://www.youtube.com/watch?v=P36RfZ_9Pdg&t=677s.[2] He spent almost his entire time criticizing the Commissioners' Court and members of the court. *Id.* at 08:15–11:17. He began by criticizing Commissioners Cotton and Wilson. *Id.* at 9:12–9:42, 9:52–10:07. Then he told Judge Massingill, "Judge, you've got to be in a nervous place," and added, "there's a reason the Republican Party is an elephant because we don't forget, we don't forget our liberties being shut

---

[2]The Parties submitted identical videos for the germane meetings, but in different formats. Judge Massingill cited YouTube links whereas Mr. Biggers provided a Dropbox link. No objections were lodged to the videos or their authenticity.

down . . . ." *Id.* at 10:20–10:40. At no point did Judge Massingill interrupt. *Id.* at 08:15–11:17. After finishing his remarks, Biggers returned to his seat, and the meeting continued. *Id.* at 11:17.

2. April 26, 2022 Meeting

During the April 26, 2022 meeting, Biggers signed up to speak on a specific agenda item concerning a proposed investigation of Commissioner Eagle. HOOD COUNTY, *April 26, 2022 Hood County Commissioners' Court*, at 57:18 (YouTube, Apr. 27, 2022), https://www.youtube.com/watch?v=KZnhLm6gxUI&t=385s. The two speakers before Biggers spoke against the investigation. *Id.* at 2:47–57:08. When Mr. Biggers took the podium, he began speaking about how the proposed investigation was outside the purview of the Commissioners' Court. *Id.* at 57:18–58:06. He then made comments about Commissioner Cotton and the pretenses of why he was fired. *Id.* at 58:07–58:20. Specifically, Biggers stated: "people have come to expect this from Commissioner Cotton, that's why he got fired." *Id.*

At that time, Judge Massingill warned Biggers that he was "out of line" for those comments. *Id.* at 58:18–58:23. Massingill then attempted to redirect Biggers's comments, stating that "this is talking about item number six, don't be attacking individual members." *Id.* at 58:23–58:27. Massingill and Biggers proceeded to argue about whether Biggers's comments were on topic. *Id.* at 58:23–58:50. When asked to leave, Biggers shouted at Judge Massingill, stating "the petty weak leadership that you show falls at your feet." *Id.* at 59:40–45. Mr. Biggers was then escorted out by the sheriff. *Id.*

Later in the meeting, another speaker expressed the opposite view of Mr. Biggers. *Id.* at 1:18:28–1:21:24. The speaker discussed his reasons for supporting the agenda item and was critical of Commissioner Eagle. *Id.* Members of the audience believed this speaker to be out of order. *Id.* at 1:19:45–1:20:02. The speaker was allowed to continue speaking. *Id.* The speaker contained his comments to the investigation and how Commissioner Eagle's residency may affect his eligibility for office. *Id.* at 1:18:28–1:21:24.

3.  November 2022 Recording

Before a Commissioners' Court meeting in November 2022, a private conversation between Judge Massingill, Commissioner Wilson, and the Judge's pastor was recorded. ECF No. 73 at 19; ECF No. 74, Exhibit 10. In the conversation, Judge Massingill and Commissioner Wilson first discussed the church Mr. Biggers attends. ECF No. 74, Exhibit 10, at 4:00–4:20. Judge Massingill then stated that he had Biggers "thrown out" before an election. *Id.* at 4:20–4:28. No further context was provided regarding Judge Massingill's comment on removing Mr. Biggers from a meeting.

The conversation then turned to discussing Mr. Biggers's leadership of the Republican Party. *Id.* at 4:28–4:50. Judge Massingill stated "we're starting a new Republican Party." *Id.* at 4:36–39. He continued that after the election, "there's not gonna be no crazies there, we're going back to our basic core values." *Id.* at 4:40–50. No name was said in particular during this part of the discussion, and no further context was provided.

4.  December 13, 2022 Meeting

On December 13, 2022, the Commissioners' Court meeting commenced with Public Comment. HOOD COUNTY, *December 13, 2022 Hood County Commissioners' Court*, at 11:56 (YouTube, Dec. 15, 2022), https://www.youtube.com/watch?v=uHNQsbgnWy4.    Mr.    Biggers approached the podium and began his remarks by attempting to play the recorded private conversation. *Id.* at 11:56–12:19.

In response, Judge Massingill recited the decorum rules of the Commissioners' Court. He stated: "It is not the intention of the Hood County Commissioners' court to provide a public forum for the demeaning of any individual or group. Neither is it the intention of the Court to allow a member of the public to insult the honesty or integrity of the Court as a body or members of the Court, individually or collectively." *Id.* at 12:27–12:47.

Judge Massingill then announced that the microphone being on before the November meeting was being "looked into" by the Attorney

5

General's office and the District Attorney's office. *Id.* at 12:47–13:03. He continued by stating Mr. Biggers will not be allowed to use the Commissioners' Court meeting to insult the integrity of Commissioner Wilson or himself. *Id.* at 13:03–13:09. Judge Massingill warned Biggers to stop the comments, or he would be escorted out of the meeting. *Id.* at 13:10–19. Biggers proceeded to argue with Judge Massingill for over a minute before Judge Massingill asked Biggers to be escorted out by the sheriff. *Id.* at 13:20–15:00.

Thereafter, Commissioner Eagle interjected, stating that the Rules allow for public criticism of the court. *Id.* at 15:00–15:23. Judge Massingill replied that what Biggers is talking about has "nothing to do with county business" because it was about Biggers's minister. *Id.* at 15:23–15:30. Mr. Biggers was then escorted out. *Id.* at 15:38.

5. January 10, 2023 Meeting

The January 10, 2023 meeting unraveled much like the previous meeting in December. Mr. Biggers took the podium during Public Comment. HOOD COUNTY, *January 10, 2023 Hood County Commissioners' Court*, at 4:00 (YouTube, Jan. 11, 2023), https://www.youtube.com/watch?v=YPzt1GzrKg4&t=550s. After reciting some Commissioners' Court Meeting rules, Biggers began introducing the recording. *Id.* 5:01–5:12. Judge Massingill once again stated Biggers was out of order. *Id.* at 5:13–19. Judge Massingill then read the rules of decorum, like he did during the December meeting. *Id.* at 5:19–6:28. While Judge Massingill was speaking, Biggers began playing the audio. *Id.* The men engaged in an argument, both speaking over each other while the audio kept playing. *Id.*

Judge Massingill then asked the sheriff to remove Biggers. *Id.* at 6:29–6:32. Biggers continued to argue with Massingill, refusing to leave until his allotted time expired. *Id.* at 6:32–9:08. Biggers proclaimed "you don't know what I am going to say . . . I am going to say facts and figures about my church that he decided to demean." *Id.* at 6:52–7:04. And "I'm going to speak to the fact that you're gonna start a new Republican Party." *Id.* at 7:06–7:11. Later, he stated that Judge Massingill's comments were "embarrassing." *Id.* at 8:40–47; 9:02–9:05.

Immediately after Biggers stepped away from the podium, Judge Massingill apologized to everyone in the room. *Id.* at 9:16–9:42. He continued by stating the following: "this is a constitutional court and . . . proper rules of decorum should be in this court and I apologize for that, but we have rules that says nobody's to have rude or demeaning behavior in here and that's what we intend– that's what I intend to follow." *Id.*

## C. Procedural posture

Mr. Biggers brought the above-captioned case against Judge Massingill in this Court on April 14, 2023. ECF No. 1. The Court granted Judge Massingill's Motion to Dismiss and issued a Final Judgment in September 2023. ECF Nos. 34, 35. On appeal, the United States Court of Appeals for the Fifth Circuit reversed the judgment of this Court in March 2025. ECF Nos. 38, 39. In October 2025, both parties filed motions for summary judgment on the live claims.[3] ECF Nos. 71, 74. The motions are ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"Summary judgment should be used most sparingly in ... First Amendment case[s] ... involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001)

---

[3]Mr. Biggers withdrew all but one of his claims since filing his Original Complaint. *See* ECF No. 13 at 5–8; ECF Nos. 27, 57. The only remaining claim is the § 1983 claim. Therefore, any constitutional challenge—facial or as applied—to the Rules are not properly before the Court.

(internal quote omitted). However, when the nonmoving party fails to meet its burden in establishing a basis for recovery that would support a jury verdict, summary judgment should be granted. *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Biggers sues Massingill only in his personal capacity, not his official capacity, under 42 U.S.C. § 1983. ECF No. 13 at 5–8; ECF Nos. 27, 57.

Government officials performing discretionary functions generally are shielded from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez*, 3 F.4th at 133.

Judge Massingill is a County Judge, which is a state official. Thus, he is entitled to qualified immunity unless Biggers demonstrates that (1) Massingill violated Biggers's constitutional or statutory rights and (2) Massingill's actions were objectively unreasonable in light of clearly established law at the time of the violation. *See id.*; *Pearson*, 555 U.S. at 236. Biggers fails to establish either prong.[4]

---

[4]The Court notes that the second prong presents a more straightforward inquiry, and Biggers's failure to establish it is dispositive. *Pearson v. Callahan*,

**A. Judge Massingill did not violate Mr. Biggers's constitutional rights.**

Biggers alleges that Judge Massingill infringed on his constitutional rights during three Commissioners' Court meetings: April 26, 2022, December 13, 2022, and January 10, 2023. However, Mr. Biggers fails to raise a genuine issue of material fact that Judge Massingill's actions violated his constitutional rights. Therefore, Mr. Biggers cannot satisfy the first prong of the analysis, and Judge Massingill is entitled to qualified immunity.

1. The Hood County Commissioners' Court is a limited public forum with rules governing decorum.

The standards applied in determining "whether a State has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). There are three categories of forums: "(1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757–58 (5th Cir. 2010).

There is no dispute that Hood County Commissioners' Court is a limited public forum. *See* ECF No. 53 at 15; ECF No. 72 at 9. In a limited public forum, "the State is not required to and does not allow persons to engage in every type of speech." *Good News Club*, 533 U.S. at 106. This

---

555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). While the Court acknowledges that conducting an analysis on both prongs is a very inefficient use the trial court's limited judicial resources, the Court feels compelled to do so in light of the Fifth Circuit's opinion in this case. *See Poindexter v. R.J. Reynolds Tobacco Co.,* N 3:99-cv-262-P, 2000 WL 358473, at *2 (N.D. Tex. Apr. 7, 2000) (Kendall, J.) ("Although this Court is not without sympathy towards the [party's] outrage, this Court is bound by the Fifth Circuit's legal interpretations."), *aff'd*, 237 F.3d 630 (5th Cir. 2000). This Court must take the Fifth Circuit's opinion at its word. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); *see also Hamilton v. Mike Bloomberg 2020 Inc.*, 474 F. Supp. 3d 836, 845 (N.D. Tex. 2020) (Pittman, J.) (the district court "has no authority or discretion to diverge from Fifth Circuit precedent").

is because "[t]he State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Id.* (quoting *Rosenberger*, 515 U.S. at 829.

However, the State's power to limit speech is not boundless. *Id.* In a limited public forum, the State's restriction cannot "discriminate against speech on the basis of viewpoint" and it "must be 'reasonable in light of the purpose served by the forum.'" *Id.* (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985)). A subject-matter restriction, however, "may be permissible if it preserves the purposes of that limited forum." *Fairchild*, 597 F.3d at 758 (internal quote omitted).

County commissioners courts "can exercise only such powers as the [Texas] Constitution itself or the statutes have specifically conferred upon them." *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948) (internal quotes omitted). And the Texas Constitution expressly delegates the conducting of county business to said court. *See* Tex. Const. Art. V. Section 18 (stating that county commissioners courts "shall exercise such powers and jurisdiction over all county business"). Such responsibilities include financial management, infrastructure oversight, public services, and other matters statutorily delegated to the Court. ECF No. 73 at 4.

A commissioners court may adopt reasonable rules to govern the conduct of its meetings. Tex. Atty. Gen. Op. DM-228 (1993) at 3. Thus, as a limited public forum, the Hood County Commissioners' Court may adopt rules and regulations for its meetings so long as the rules do not infringe on constitutional guarantees. The County Judge, as the "presiding officer" of the County Commissioners' Court is tasked with enforcing such rules and maintaining order in the meetings. *See* Tex. Const. Art. V. Section 18; Tex. Loc. Gov't Code § 81.001(b); ECF No. 73 at 11.

The Hood County Commissioners' Court has created such rules, as permitted by law. The Rules permit speakers to make comments on specific agenda items and on matters not on the agenda. Public input on matters not on the agenda (Public Comment) occurs during the first

regularly scheduled meeting of the month. The Rules further outline decorum required of every speaker. As the County Judge, Judge Massingill enforces these rules.

2. <u>Judge Massingill appropriately applied Hood County Commissioners' Court's Rules to address Mr. Biggers's conduct.</u>

Biggers complains of three meetings. In each meeting, Judge Massingill applied the Rules in accordance with the constitutional parameters of a limited public forum.

### i. *April 26, 2022 Meeting*

Mr. Biggers's comments at the April 2022 meeting violated the Rules of the Hood County Commissioners' Court. There, Biggers signed up to speak about a specific agenda item. HOOD COUNTY, *April 26, 2022 Hood County Commissioners' Court*, at 57:18 The agenda item concerned a proposed investigation of Commissioner Eagle. *Id.* at 57:18–58:06. Mr. Biggers, after expressing sentiments against the investigation, began making comments about Commissioner Cotton. Specifically, Biggers stated: "people have come to expect this from Commissioner Cotton, that's why he got fired." *Id.* After Judge Massingill warned Biggers that he was out of order for departing from the agenda and making personal attacks, Biggers proceeded to argue with Massingill, stating that Judge Massingill showed "petty weak leadership." *Id.* at 58:18–59:45. Thus, not only did Biggers depart from the specific agenda item and lodge personal attacks towards Judge Massingill and Commissioner Cotton, but he also proceeded to do so *after* being warned by Judge Massingill that he was out of order.

Biggers argues that Judge Massingill engaged in unlawful viewpoint discrimination by these actions, pointing to a speaker later in the meeting as evidence. This other speaker was allowed to criticize Commissioner Eagle, even though members of the audience believed him to be out of order. *Id.* at 1:18:28–1:21:24. However, the agenda item was about Commissioner Eagle, and the speaker contained his comments to the investigation and how Commissioner Eagle's residency may affect his eligibility for office. *Id.* at 1:18:28–1:21:24. Thus, the

speaker remained on topic and his comments were devoid of personal attacks.

Conversely, Biggers strayed off topic of the agenda item and insulted members of the court, which is against the rules of decorum. Judge Massingill thus prohibited the subject matter of Biggers's speech—comments that were off topic and served to degrade members of the Commissioners' Court—not the viewpoint. This is further evidenced by the two speakers before Mr. Biggers that strongly criticized the proposed agenda item—sharing the same viewpoint as Mr. Biggers. Neither of those speakers were warned about heeding the Rules because they both contained their comments to the agenda item. Therefore, Mr. Biggers failed to raise a genuine issue of material fact regarding the April 2022 meeting.

Other courts have upheld similar actions. *See, e.g.*, *Wenthold v. City of Farmers Branch, Tex.*, No. 3:11-CV-0748-B, 2012 WL 467325, at *10 (N.D. Tex. Feb. 14, 2012) (Boyle, J.), *aff'd sub nom.*, *Wenthold v. City of Farmers Branch, Tex.*, 532 Fed. Appx. 474 (5th Cir. 2013). There, a speaker on a specific agenda item at a city council meeting item started on topic but strayed into general criticism of the city council. *Id.* at *2. The mayor stopped the off-topic personal attacks, noting that he is "tired" of that speaker in particular because of his continued antics at meetings. *Id.* The audience members voiced disagreement with the mayor's decision. *Id.* Justice Boyle decided, and the Fifth Circuit affirmed, that stopping off-topic, disruptive comments did not infringe on the speaker's right to free speech. *Id.* at 10.

Like *Wenthold*, Judge Massingill allowed Mr. Biggers to speak on the agenda item and only stopped Mr. Biggers when his remarks became off-topic and disruptive. In fact, it was not until after Judge Massingill warned Biggers to remain on topic and Biggers failed to comply that Massingill called for Biggers's removal. Therefore, Biggers has not raised a genuine issue of material fact as to whether Massingill violated Biggers's constitutional rights during the April 2022 meeting.

### ii. December 13, 2022 and January 10, 2023 Meetings

While slightly different, Biggers's claims regarding the December and January meetings fail for largely the same reasoning. Biggers alleges he was silenced by Massingill—not because he was disrupting those meetings—but because Massingill disagreed with Biggers's views about the Commissioners' Court. However, a review of the record shows otherwise.

In both the December 2022 and January 2023 meetings, Mr. Biggers took the podium during Public Comment and attempted to play a private conversation that was inadvertently recorded before a Commissioners' Court meeting. During this conversation between Judge Massingill, Commissioner Wilson, and the Judge's pastor, Judge Massingill stated that he had Biggers "thrown out" before an election. ECF No. 74, Exhibit 10. at 4:20–4:28. No further context was provided regarding this comment. The conversation then turned to discussing Mr. Biggers's leadership of the Republican Party. *Id.* at 4:28–4:50. Judge Massingill stated "we're starting a new republican party." *Id.* at 4:36–39. He continued that after the election, "there's not gonna be no crazies there, we're going back to our basic core values." *Id.* at 4:40–50. No name was said in particular during this part of the discussion, and no further context was provided.

To support its position, Judge Massingill points the Court to *Caudillo ex rel. Caudillo v. Lubbock Indep. Sch. Dist.*, 311 F. Supp. 2d 550, 572 (N.D. Tex. 2004). In *Caudillo*, the court held that officials may restrict particular subject matters that fall outside the purpose of a limited public forum. *Id.* at 572. There, students sought to use school facilities to promote discussions of sexual orientation. *Id.* at 555. Finding that the group's website violated its abstinence-only education policy, the school denied the students' access. *Id.* at 555–56. The court held there was no First Amendment violation, reasoning that "[s]ubject matter of a sexual content in a limited public forum is clearly excludable if reasonable." *Id.* at 564. Given that "[t]he forum was reserved for students and student groups," the Court found the exclusions more than reasonable. *Id.*

13

Biggers posits that reliance on *Caudillo* is misplaced because of the salacious nature of that case. The Court agrees to the extent that the case's salaciousness played a part in that court's reasoning—the court even stated: "First Amendment jurisprudence recognizes an interest in protecting minors from exposure to vulgar and offensive spoken language." *Id.* at 562. However, the court indeed held that a limited public forum may restrict topics unrelated to the forum's intended purpose. That analysis is in fact highly relevant in the case at bar.

Here, the Hood County Commissioners' Court has a constitutionally mandated purpose: the administration of county business. *See* Tex. Const. Art. V. Section 18 (stating that County Commissioners' Courts "shall exercise such powers and jurisdiction over all county business"). County business includes financial management, infrastructure oversight, public services, and other matters statutorily delegated to the Court. ECF No. 73 at 4. And to facilitate the administration of county business, commissioners courts may adopt reasonable rules to govern the conduct of its meetings. Tex. Atty. Gen. Op. DM-228 (1993) at 3.

The Hood County Commissioners' Court did so when it adopted the Rules. The Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service. The Rules do, however, prohibit a speaker from demeaning of any individual or insulting the integrity of any member of the Hood County Commissioners' Court. The Rules further specify that Public Comment is for speakers to "express themselves on issues of county governance." ECF No. 73 at 10. Thus, Commissioners' Court meetings are reserved for the administration of county business, and prohibiting demeaning or insulting comments is a reasonable subject matter restriction in light of the purpose served by the court.

The private recording falls short of the permitted criticism contemplated by the Rules. The recording, as Judge Massingill accurately stated, had "nothing to do with county business." HOOD COUNTY, *December 13, 2022 Hood County Commissioners' Court*, at 15:23–15:30. Rather, the recording mentions Biggers's church, the local Republican Party, and the fact that Judge Massingill had Biggers

removed from one meeting. Contrary to what Plaintiff asserts, there is a distinction between criticism of the court's decisions and comments intended for the degradation or embarrassment of its members.

Biggers even stated as much in the January 2023 meeting. After refusing to leave the meeting upon being ruled out of order, Biggers proclaimed "you don't know what I am going to say . . . I am going to say facts and figures about my church that he decided to demean." HOOD COUNTY, *January 10, 2023 Hood County Commissioners' Court*, at 6:52–7:04. And "I'm going to speak to the fact that you're gonna start a new Republican Party." *Id.* at 7:06–7:11. Later, he stated that Judge Massingill's comments were "embarrassing." *Id.* at 8:40–47; 9:02–9:05. Thus, not only did Mr. Biggers admit he was not going to criticize any act, omission, policy, procedure, program, or service of the Commissioners' Court, but also Biggers stated that the comments were "embarrassing" to Judge Massingill. The reason, then, to play the recording would be to publicly demean Judge Massingill.

This is especially true considering Mr. Biggers has previously utilized Public Comment in accordance with the Rules. In the March 2022 meeting, Biggers strongly criticized the court, Commissioners Cotton and Wilson, and Judge Massingill. At no point did Judge Massingill interrupt. Therefore, Mr. Biggers was permitted to lodge criticism of the Commissioners' Court, so long as he abided by the Rules.

Contrary to Mr. Biggers's assertion, merely stating that Judge Massingill removed Mr. Biggers from a meeting is not evidence of viewpoint discrimination. Rather, the record demonstrates that Mr. Biggers was allowed to freely criticize decisions of the Commissioners Court. However, when Mr. Biggers strayed into commentary that Judge Massingill, as the presiding officer, deemed to contravene the Rules and the purpose of the forum, Biggers was warned of his conduct. Once Mr. Biggers failed to heed the warning, he was escorted out.

Biggers's viewpoint discrimination theory relies on selectively quoted portions of the recording that, when viewed in full context, do not support the advanced narrative. In his motion, Biggers propounds that the recording "demonstrates" that the Judge's decisions were politically

motivated, animated by "personal animus," and that the Judge then "publicly bragged" about removing him from a Commissioners' Court meeting. ECF No. 74 at 13. Rather, Judge Massingill stated "I had him thrown out right before the election" without any further elaboration. The Court can glean no more from this comment other than it was said as a matter of fact in a private conversation with two other people. Biggers also claims that "Judge Massingill referred to Plaintiff as a 'crazy.'" ECF No. 74 at 6. This is not so. Judge Massingill stated "there's not gonna be no crazies there, we're going back to our basic core values" when referencing starting a "new republican party." No name was said in particular during this part of the discussion, and no further context was provided. When viewed in its entirety, the recording undermines the narrative advanced by Biggers.

Thus, Biggers has not raised a genuine issue of material fact as to whether Massingill violated Biggers's constitutional rights during the December 2022 and January 2023 meetings.

## B. Judge Massingill's actions were not objectively unreasonable in light of clearly established law at the time of the violation.

Even if Mr. Biggers could establish that Judge Massingill's actions violated a constitutional right, Biggers cannot establish that Massingill's actions were objectively unreasonable in light of clearly established law at the time of the violation.

For a government official's conduct to violate clearly established law, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Therefore, unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"[5] *D.C. v.*

---

[5]Finding any consistency regarding qualified immunity under Fifth Circuit precedent is typically an arduous task for lowly trial judges, akin to exploring the Amazon River valley without a guide. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458–60, 462 (5th Cir. 2022) (relying on extra-record sources such as The New York Times and The Guardian to find no qualified immunity for

16

*Wesby*, 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The constitutional question must be framed "with specificity and granularity." *Morrow*, 917 F.3d at 875. For example, in *Morrow*, the Fifth Circuit explained that the Fourth Amendment's prohibition on unreasonable seizures is obvious but "not enough" to satisfy the level of granularity required in framing the constitutional question. "Rather, [t]he dispositive question is whether the violative nature of particular conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). This is because qualified immunity is unavailable only when an officer had "fair notice," based on the specific circumstances of the case, "that his *particular* conduct was unlawful." *Id.* (internal quote omitted) (emphasis in original).

In fact, the Court's own framing in its Opinion granting Judge Massingill's motion to dismiss, was ruled "too broad[]" by United States Court of Appeals for the Fifth Circuit. *Biggers v. Massingill*, No. 23-11023, 2025 WL 429974, at *2 (5th Cir. Feb. 7, 2025) ("Relying on the second qualified immunity prong, the district court ruled that silencing a speaker 'for an alleged decorum violation' does not 'clearly' violate the First Amendment. The court framed the inquiry too broadly, though.").[6] The Fifth Circuit continued, stating that "[t]he question is whether Biggers's rights were violated 'in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix*, 577 U.S. at

---

an officer's use of deadly force where suspect resisted arrest and drove over another officer with his vehicle) *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding that qualified immunity barred suit when officers found a suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames").

However, when it comes to the "clearly established law" prong, even the Fifth Circuit notes that "Supreme Court cases have been repeated and consistent on this high standard." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021).

[6]The Court's previous framing was the following: "a reasonable presiding officer would not recognize that removing a speaker for an alleged decorum violation clearly runs afoul of the First or Fourteenth Amendments." ECF No. 34 at 4.

12). While the Fifth Circuit did not find further elaboration necessary, it hinted that the proper framing be the following: a reasonable presiding officer would recognize that removing a speaker for an alleged decorum violation clearly runs afoul of the First Amendment when invocation of the rule was mere pretext to viewpoint discrimination.

Using the appellate court's guidance, Mr. Biggers identifies no authority of factual similarity that would squarely govern the case at hand. Instead, the only authority he cites consists of general principles of free speech and limited public forums. ECF No. 77 ("By 2022, every reasonable official in this circuit knew that citizens have a right to criticize their government during an open-comment period and that viewpoint-based exclusions are unconstitutional."). While Biggers's general legal proposition is true, it, like *Morrow* and like the Court's previous framing, is not enough.

Generally, to satisfy this prong, "the ***plaintiff*** must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution, and explain why the case clearly proscribed the conduct of that individual officer." *Cope*, 3 F.4th at 205 (cleaned up) (emphasis added).[7] Mr. Biggers fails to pinpoint precedent holding that a presiding county judge violates the First Amendment by cutting off a speaker who, after being warned to remain on topic, departs from an agenda item, attempts to play an irrelevant private recording, makes demeaning comments about members of the court unrelated to the agenda or county business, and then engages in a heated debate with the presiding county judge. Nor has Mr. Biggers pinpointed precedent holding the invocation of decorum rules was viewpoint discrimination on substantially similar facts. *But see* ROBERT'S RULES OF ORDER NEWLY REVISED 648, 11th ed. 2013 ("The assembly has the right to protect itself from annoyance by nonmembers . . . [a]t a mass meeting, any person who attempts to disrupt the proceedings in a manner obviously hostile to the announced purpose of the meeting can be treated as a nonmember

---

[7]Mr. Biggers bears the burden of identifying a case because Mr. Biggers bears the burden to demonstrate the inapplicability of the qualified immunity defense. *Ramirez*, 3 F.4th at 133.

18

under the provisions of this paragraph."). Thus, Mr. Biggers fails to meet his burden on the second prong of the analysis.

In fact, cases in the Northern District almost identical to the one before this Court concluded that the removal of a citizen speaker for personally confronting a member of the Dallas County Commissioners' Court during his public comment did not violate his constitutional rights and. *Stein v. Dallas Cnty.*, 3:22-CV-1255-D, 2023 WL 2700720, at \*4 (N.D. Tex. Mar. 29, 2023) (Fitzwater, J.); *Wenthold*, 2012 WL 467325, at \*10. In *Stein*, a local political activist used his public comment period to question a commissioner about a D Magazine article discussing the commissioner's college-aged criminal activity. *Id.* at \*1. The commissioner removed the speaker under a county rule prohibiting "demeaning an individual or an organization." *Id.* at \*3. The court held the removal permissible under the Fourteenth Amendment because the speaker's violation of the rule distinguished him from other participants and provided a rational basis to end his remarks. *Id.*

As discussed above, in *Wenthold*, the court held, and the Fifth Circuit affirmed, that a mayor's decision to stop a speaker's off-topic and disruptive personal attacks during a city council meeting did not violate the speaker's First Amendment rights, even where the mayor expressed frustration with the speaker's conduct. *Wenthold*, 2012 WL 467325, at \*10. The *Wenthold* court stated that the plaintiff "seems to be claiming an entitlement to speak without interruption despite straying off-topic as well as a right to rebut [the mayor's] comments." *Id.* at \*10. In fact, the court determined on substantially similar facts that the decorum rules were not a pretext for the mayor to prevent the speaker from expressing a viewpoint with which he disagreed. *Id.* at \*9. The same is true here, as there is no evidence of pretext in this case. *Supra* Part A.

Accordingly, not only did Biggers fail to meet his burden, but also a reasonable, similarly situated presiding officer of a local public meeting could not have possessed "fair notice" that enforcing the decorum rules violated Mr. Biggers's First Amendment rights under current precedent. Thus, where a speaker is removed for loudly and disruptively contravening established decorum rules and the intended scope of a

19

public-comment session, it is not sufficiently clear to a reasonable presiding officer that the speaker's removal infringes a constitutional right, even if the officer had previous frustrations with the speaker.

Judge Massingill's unknowingness is evidenced by him apologizing to the audience members in the January 2023 meeting, stating "this is a constitutional court. . . proper rules of decorum should be in this court and I apologize for that, but we have rules that says nobody's to have rude or demeaning behavior in here and that's what we intend– that's what I intend to follow." HOOD COUNTY, *January 10, 2023 Hood County Commissioners' Court*, at 9:16–9:42. While this apology is not dispositive, the utter lack of case law to support Biggers's contention is.

Therefore, Mr. Biggers has not raised a genuine issue of material fact as to whether Judge Massingill's actions were objectively unreasonable in light of clearly established law at the time of the violation. Mr. Biggers thus cannot satisfy the second prong of the analysis, and Judge Massingill is entitled to qualified immunity.

## CONCLUSION

"Freedom of speech is a principal pillar of a free government." Benjamin Franklin, *On Freedom of Speech and the Press*, PA. GAZETTE, Nov. 17, 1737. While the First Amendment strongly protects expressive freedoms, courts have long recognized that the government may impose reasonable, viewpoint-neutral restrictions in limited public forums. Such restrictions do not erode free speech because individuals remain free to express their views through alternative channels, including traditional public forums, private property, and digital platforms.

For the foregoing reasons, the Court **GRANTS** Judge Massingill's Motion and **DENIES** Mr. Biggers's Motion. Accordingly, all claims against Judge Massingill are **DISMISSED with prejudice.**

**SO ORDERED** on this **14th day of May 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

20